(924 P.2d 642)
No. 75,075

In the Interests of L.D.B., C.C.B., and V.J.B., Minor Children Under 18 Years of Age.

Opinion filed August 2, 1996.

*Gerald J. Domitrovic,* of Wichita, for appellant natural mother.

*William R. Griffith,* of Wichita, for appellant natural father.

*Shawn Elliott,* of Kansas Department of Social and Rehabilitation Services, of Wichita, for appellee.

*Pamela J. Guizlo,* of Wichita, guardian ad litem, for L.D.B., C.C.B., and V.J.B.

Before ELLIOTT, P.J., MARQUARDT, J., and WILLIAM O. ISEN-HOUR, JR., District Judge, assigned.

MARQUARDT, J.: A.W.B. and K.Y.B., the natural parents of L.D.B., C.C.B., and V.J.B., appeal from the district court's termination of their parental rights, arguing that K.S.A. 38-1585 unconstitutionally shifts the burden of proof to parents to prove their fitness and that there was not substantial competent evidence to support the termination of their parental rights.

On July 11, 1990, the State filed a petition alleging that L.D.B., C.C.B., and V.J.B. were children in need of care. V.J.B. was placed in protective custody on July 9, 1990. The petition alleged that A.W.B. had physically abused V.J.B. The district court placed the children in the protective custody of the State Secretary of Social and Rehabilitation Services (SRS).

During a hearing on August 2, 1990, the parents stipulated to the facts alleged in the petition as amended. The district court ruled that each child was a child in need of care and ordered that the children remain in the temporary custody of SRS. The district court held numerous review hearings between September 24, 1990, and September 16, 1993.

On September 17, 1993, SRS filed a motion to terminate the parental rights of A.W.B. and K.Y.B. as to L.D.B., C.C.B., and V.J.B. The motion relied solely on the presumption of unfitness that attaches under K.S.A. 38-1585.

At the November 23, 1993, termination hearing, the district court took judicial notice of two prior parental termination cases in which A.W.B. and K.Y.B. were found to be unfit parents. The district court applied K.S.A. 38-1585 and held that A.W.B. and K.Y.B. had failed to produce clear and convincing evidence to rebut the presumption of unfitness created by the prior terminations of their parental rights and, therefore, terminated their parental rights as to L.D.B., C.C.B., and V.J.B.

A.W.B. and K.Y.B. appealed. This court reversed on the grounds that the district court had improperly required A.W.B. and K.Y.B. to meet the clear and convincing evidence standard of proof. In *In*

*re L.D.B.*, 20 Kan. App. 2d 643, 646-47, 891 P.2d 468 (1995), the court held that the preponderance of the evidence standard must be used when evaluating whether the parents have rebutted the presumption of unfitness created by K.S.A. 38-1585.

On remand, the district court applied the preponderance of the evidence standard and found that neither parent had rebutted the presumption of unfitness, terminating the parental rights of A.W.B. and K.Y.B.

A.W.B. and K.Y.B. argue that K.S.A. 38-1585 is unconstitutional because it shifts the burden of proof to the parent to prove his or her fitness.

"[A] statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992); see *Sedlak v. Dick*, 256 Kan. 779, 793, 887 P.2d 1119 (1995).

K.S.A. 38-1585 provides in relevant part:

"(a) It is presumed in the manner provided in K.S.A. 60-414 and amendments thereto that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes by clear and convincing evidence that:

(1) A parent has previously been found to be an unfit parent in proceedings under K.S.A. 38-1581 *et seq.* and amendments thereto, or comparable proceedings under the laws of another state, or the federal government;

. . . .

(3) on two or more prior occasions a child in the physical custody of the parent has been adjudicated a child in need of care as defined by subsection (a)(3) of K.S.A. 38-1502 and amendments thereto.

"(b) The burden of proof is on the parent to rebut the presumption. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall now terminate the [parent's] parental rights in proceedings pursuant to K.S.A. 38-1581 *et seq.* and amendments thereto."

This court has addressed the constitutionality of K.S.A. 38-1585 in two prior published cases.

In *L.D.B.*, 20 Kan. App. 2d at 645-46, the court applied the standard from *Mobile, J. & K.C.R.R. v. Turnipseed*, 219 U.S. 35, 43, 55 L. Ed. 78, 31 S. Ct. 136 (1910), stating that "[b]ecause a prior determination of unfitness essentially requires a finding that the parent will continue to be unfit into the foreseeable future, such a prior determination is rationally connected to a parent's current fitness." This court found that inferring a parent's current unfitness from a past finding of unfitness does not appear to be so unreasonable as to be purely arbitrary. *L.D.B.*, 20 Kan. App. 2d at 646; see *Turnipseed*, 219 U.S. at 43.

A divided panel of this court held that K.S.A. 38-1585 was constitutional as long as it was applied in proper coordination with K.S.A. 60-414. In *In re J.L.*, 20 Kan. App. 2d 665, 681, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995), the court, reading the two statutes together, held:

"[I]n order for the presumption raised by K.S.A. 1994 Supp. 38-1585 to be applied in a constitutional fashion, the trial court must first determine whether it is a subsection (a) or subsection (b) presumption. If it is determined to be a subsection (b) presumption, *any evidence* which would support a finding of fitness, including the uncorroborated testimony of a parent, will result in the disappearance of the presumption, and the burden of proving unfitness will once again be upon the State. If it is determined by the trial court to be a subsection (a) presumption, it will operate in the fashion described in the statute."

K.Y.B. criticizes the *J.L.* decision but does not provide any authority or clear argument that this court should decide the due process issue any differently. K.Y.B. does note that the legislature did not change the language in K.S.A. 1995 Supp. 38-1583(a), which requires clear and convincing evidence that the parent is unfit by reason of conduct or condition that is unlikely to change in the foreseeable future before the court can terminate a parent's rights. K.Y.B. argues that because K.S.A. 1995 Supp. 38-1583(a) was not changed, there is still a legislatively and constitutionally recognized presumption that a parent is fit until the State overcomes this presumption by presenting clear and convincing evidence that the parent is unfit. This case is governed by the more specific statute K.S.A. 38-1585. See *State v. Reed*, 254 Kan. 52, 54, 865 P.2d 191 (1993) (noting that "when there is a conflict between

a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless the legislature intended to make the general act controlling").

Both A.W.B. and K.Y.B. argue in direct conflict to this court's holding in *L.D.B.*, contending that the reliance on a past judicial finding of unfitness makes the application of K.S.A. 38-1585 arbitrary and capricious.

Absent an en banc review, this court does not have the authority to overrule a prior panel of this court. *In re Marriage of Cray*, 254 Kan. 376, 382, 867 P.2d 291 (1994).

Here, the district court asked counsel for their positions on whether the presumption of unfitness in this case should be a subsection (a) or a subsection (b) presumption. After hearing argument, the district court applied the factors suggested in *J.L.* and ruled that the prior terminations established a subsection (a) presumption.

A.W.B. argues that the proper application of *J.L.* would lead to a reversal of the district court due to the lapse of time between the prior findings of unfitness and the current termination. The district court distinguished *J.L.* from the instant action in that in *J.L.* there apparently was no contact between the parents and the State between a termination in 1986 and a subsequent termination in 1994 that was based on the presumption.

The district court stated in its May 31, 1995, journal entry:

"[T]he [court] finds that this case is a 60-414(a) presumption based on:

"1. SRS and the court [have] been working with these parents from August 1986 to November 23, 1993, except for the period between October 19, 1988, and July 11, 1990.

a. case number 86JC100 was filed August 1, 1986, the motion for termination was filed November 10, 1987, and parental rights were terminated June 2, 1988;

b. case number 88JC56 was filed February 19, 1988, the motion for termination was filed July 25, 1988, and parental rights were terminated on October 19, 1988;

c. case number 90JC175 was filed . . . July 11, 1990, less than two years after the parents' rights were terminated in case number 88JC56;

"2. cases numbered [86JC100], 88JC56 and 90JC175 involve the same parents and all of the children are siblings;

"3. there is a strong correlation between the factors in the prior cases and the current factual scenario; and in order to determine whether there is a rational connection between cases the court must consider the substance of the termination of parental rights in the prior two cases;

    a. there is a consistent [course] of conduct by the parents in all three cases;

    b. the allegation[s] in cases numbered [86JC100], 88JC56 and [90JC175] involve physical abuse by the father and neglect;

    c. while there has been some progress made by the parents they continue to be inconsistent in their therapy attendance;

    d. there has been an inability to rehabilitate the family;

    e. the allegations of the petition in this case show the same issues as the prior two case[s];

"4. The parents have complete and equal access to information in the case and during therapy.

    a. The court has had seventeen (17) review hearings in this case with evidence being presented and both the parents and their counsel being in attendance at each hearing;

    b. the evidence presented has been consistent in all three cases;

    c. there has been no undue burden or hardship placed upon the parents in this case in requiring them to go forward with the evidence;

"The court finds that K.S.A. 38-1585 applies to this case and that subsections (1) and (3) are applicable. Pursuant to subsection (b) the burden of proof is on the parent to rebut the presumption."

K.S.A. 38-1585 was constitutionally applied in this case. Although there was a substantial lapse of time between the prior findings of unfitness and the present termination, the lapse was not as great as in *J.L.*, and the record shows contact between SRS, the district court, and the parents during much of the intervening period. *Cf. J.L.*, 20 Kan. App. 2d at 668-69.

Both parents argue that there was insufficient evidence to find each of them unfit.

The Kansas Supreme Court discussed the appropriate standard of appellate review for termination of parental rights in *In re S.M.Q.*, 247 Kan. 231, 240, 796 P.2d 543 (1990):

"The applicable scope of review for the appellate courts in a termination of parental rights case is not whether the record contains substantial competent evidence of a clear and convincing nature but whether there is *substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that parental rights should be terminated.*" (Emphasis added.)

The appellate court does not reweigh the evidence or pass upon the credibility of witnesses; it must review the evidence in the light most favorable to the prevailing party. *S.M.Q.*, 247 Kan. at 234.

Because the district court applied K.S.A. 38-1585 and shifted the burden of proof to the parents, the issue at the district court level was whether A.W.B. and K.Y.B. presented enough evidence to rebut the presumption of unfitness.

A.W.B. notes that SRS presented a reintegration plan that was approved by the district court after the child in need of care petition had been filed in this case. A.W.B. argues that SRS would not have introduced such a plan if he had remained unfit. The record indicates that the reintegration plan was not implemented because SRS never concluded that it was appropriate. The introduction of this plan, however, does not show that A.W.B. was fit.

A.W.B. points to no evidence in the record showing that he was fit. Terry Tullis, the SRS program worker assigned to A.W.B. and K.Y.B., testified that she did not think that A.W.B. would be able to take care of the children. There is substantial competent evidence in the record to support the district court's decision that A.W.B. did not present sufficient evidence to rebut the presumption of unfitness.

K.Y.B. ignores the fact that the district court based its decision on whether K.Y.B. presented enough evidence to rebut the presumption. K.Y.B. frames her sufficiency of the evidence argument as if the district court had conducted a determination of fitness without applying the presumption of K.S.A. 38-1585.

Tullis stated that she did not want to say that K.Y.B. was an unfit parent, but rather that K.Y.B. needed more support and could improve.

Sandra Crockett, the social worker assigned to K.Y.B., stated that she did not think K.Y.B. was a fit parent "[a]s far as [the] children being returned to her home." Crockett stated that the main issues were dependency, immaturity, budgeting, and parenting. Crockett stated that K.Y.B. "really hasn't made the changes that she needs to make in order to—to show that she's going to be able to take care of the children on a long term basis, the amount of children that it would be and that type of thing."

Because this court must review the evidence in the light most favorable to the prevailing party, we conclude that the district court's decision to terminate K.Y.B.'s parental rights is supported by substantial competent evidence. See *S.M.Q.*, 247 Kan. at 234.

Affirmed.