(26 P.3d 78)

No. 84,871

IN THE MATTER OF THE APPLICATION OF MERCY HEALTH
SYSTEM OF KANSAS, INC., FOR EXEMPTION FROM AD VALOREM
TAXATION IN BOURBON COUNTY, KANSAS

Opinion filed June 29, 2001.

*Larry D. Nuss*, of Nuss & Farmer, P.A., of Fort Scott, for appellant.

*Geoffrey Clark* and *Terri L. Johnson*, assistant county attorneys, and *John Swarts III*, county attorney, of Fort Scott, for appellee.

*H. Philip Elwood* and *Anne M. Kindling*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for *amicus curiae* Kansas Hospital Association.

Before BEIER, P.J., PIERRON, J., and BUCHELE, S.J.

BEIER, J.: Mercy Health System of Kansas, Inc., (Mercy) appeals the ruling of the Board of Tax Appeals (BOTA) denying it an exemption from ad valorem taxation for a rehabilitation center. To resolve the appeal, we must evaluate BOTA's interpretation and application of K.S.A. 2000 Supp. 79-201 *Ninth*, which provides a tax exemption for property used in the delivery of certain humanitarian services.

Mercy, a nonprofit corporation, applied for an exemption for its free-standing rehabilitation center, which it had moved from its hospital in Fort Scott to a downtown building with additional space and improved accessibility. The center employs, among others, an exercise physiologist, a physical therapist, a massage therapist, an occupational health physician who treats workers compensation injuries, an osteopath who delivers manipulative therapy, and a physician who does cardiac rehabilitation.

The center also provides a "Fitness Zone," essentially a fee-based health club for members of the public who are permitted to use the center's fitness equipment before and after office hours. The membership fee is $30 per month for a family. At the time of the hearing, there were 82 memberships, and 30 of them were held by hospital employees. Some of the remaining 52 were held by former rehabilitation outpatients of the center who wanted to follow up on their therapy. Because of space and time limitations, the Fitness Zone can increase its total membership only by 10 percent. Each member of the Fitness Zone is required to undergo a health evaluation before exercising, and a physical therapist is present at all times when members are using the equipment.

The massage therapist at the center offers massages and various body wraps. Although these are not the types of services that a physician would prescribe, Dr. David Phelps testified that they are forms of alternative medicine requested by the community. Dr. Phelps was aware of one other business that offered massage services in the downtown area, and Mercy's counsel acknowledged that there were two other health clubs in the market.

Fitness Zone memberships account for 2.34 percent and massage therapy for 1.61 percent of the total gross revenue of the

center, which was $798,037 in the fiscal year reviewed. Those figures reflected only 9 months of operation for the massage therapist.

BOTA made the following findings in denying Mercy's application:

"9. The applicant asserts the Rehabilitation Center offers the public an alternative to the free weights found at a typical health center. The applicant further asserts any revenues derived or use of the property by the general public is minimal in scope and insubstantial in nature. The applicant requests the exemption be granted pursuant to K.S.A. 79-201 *Ninth*, and amendments thereto.

"10. [Bourbon] County recommends the request for an exemption be denied. The County asserts the applicant offers services that are no different than those offered by a private, for-profit health club or fitness center. The County notes that the applicant is unable to demonstrate that the fitness center memberships, the massages, and body wraps somehow aided the applicant in providing rehabilitation services to its patients. The County also notes that [Dr.] Phelps testified that an individual was hired to perform the massages and body wraps. However, this person is not involved in any other way in performing physical therapy.

"11. The Board finds that the applicant's request for an exemption for the Rehabilitation Center must be denied. Although the applicant may use the Rehabilitation Center to provide rehabilitation services to its patients, the applicant also uses the property to provide services to the general public.

"12. The applicant has not demonstrated that there is a community need for the additional services being provided by the applicant. The applicant must prove 'by a preponderance of competent evidence' that there is a community need for the services provided by the applicant. *9200 Santa Fe Corp. v. Board of Johnson County Comm'rs*, 19 K.A.2d 91, 94, 864 P.2d 742 (1993). As the County notes, there are other health and fitness centers in the community. There appears to be no reason for the applicant to offer fitness club memberships, massages, aromatherapy, and body wraps to non-patients.

"13. If the applicant provides these services to help offset the costs of providing rehabilitation services, the Supreme Court has held such a use [cannot] be exempted. See *Defenders of the Christian Faith, Inc. v. Horn*, 174 Kan. 40, 254 P.2d 830 (1953); *Kansas State Teacher's Ass'n v. Cushman*, 186 Kan. 489, 351 P.2d 19 (1960). The Board concludes that the exemption request for the Rehabilitation Center must be denied."

## Standard of Review

The Kansas Supreme Court set forth our standard of review in a recent case discussing K.S.A. 2000 Supp. 79-201 *Ninth*:

"The statute we consider in this case does not involve the question of 'exclusive use' but rather involves a question of actual use 'for the predominant purpose of providing humanitarian services.' K.S.A. 79-201 *Ninth*. We do not depart from our earlier decisions and the fundamental rules and legal principles established as guidelines to be applied when examining tax exemption statutes, which are quoted in part in the BOTA decision:

'(1)    Taxation is the rule; exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. [Citation omitted.]

'(2)    Constitutional and statutory provisions exempting property from taxation are to be strictly construed. [Citations omitted.]

'(3)    The burden of establishing exemption from taxation is on the one claiming it. [Citation omitted.]' [Citation omitted.]

"However, because we deal with a newly enacted exemption based upon other than 'exclusive use,' we may not ignore the very fundamental rule of statutory interpretation. The intent of the legislature, where it can be ascertained, governs the construction of the statute, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. [Citation omitted.] The rule of strict construction is subservient to the fundamental rule of statutory construction, which requires that the intent and purpose of the legislature govern. [Citation omitted.]

.  .  .  .

" '. . . Interpretation of a statute is a question of law, and this court's review is unlimited.' [Citation omitted.] BOTA is a specialized agency that exists to decide taxation issues, and its decisions should be given great weight and deference when it is acting in its area of expertise. However, if we find that BOTA's interpretation is erroneous as a matter of law, we will take corrective steps. [Citation omitted.]

.  .  .  .

"When a statute is plain and unambiguous, a court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 745-49, 973 P.2d 176 (1999).

## Analysis

### K.S.A. 2000 Supp. 79-201 *Ninth* provides in relevant part:

"All real property and tangible personal property actually and regularly used by a community service organization for the predominant purpose of providing humanitarian services, which is owned and operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign not-for-profit corporation if: . . . (e) the actual use of property for which an exemption is claimed must be substantially and predominantly related to the purpose of providing humanitarian services, except that, the

use of such property for a nonexempt purpose which is minimal in scope and insubstantial in nature shall not result in the loss of exemption if such use is incidental to the purpose of providing humanitarian services by the corporation . . . . As used in this clause, 'humanitarian services' means the conduct of activities which substantially and predominantly meet a demonstrated community need and which improve the physical, mental, social, cultural or spiritual welfare of others or the relief, comfort or assistance of persons in distress or any combination thereof including but not limited to health and recreation services, child care, individual and family counseling, employment and training programs for handicapped persons and meals or feeding programs."

Mercy argues BOTA erroneously interpreted this statute to require Mercy to demonstrate a community need for Fitness Zone memberships and massage services. In its view, if the statute is interpreted correctly, an exemption is authorized despite certain nonhumanitarian uses, as long as they are "minimal in scope and insubstantial in nature" and "incidental to the purpose of providing humanitarian services by the corporation."

Bourbon County (County), for its part, argues that BOTA properly analyzed the statute by first determining whether the fitness and massage services were humanitarian in nature and by then determining whether they were minimal and insubstantial and incidental to the humanitarian services.

We agree with Mercy. BOTA's interpretation and application of the statute did not follow the pattern suggested by the County. Rather, it conflicted with it and the plain and unambiguous language of the statute itself.

Under K.S.A. 2000 Supp. 79-201 *Ninth*, BOTA first needed to determine whether the actual and regular use of the property was "substantially and predominantly related to the purpose of providing humanitarian services." See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. at 746. Although BOTA never made this finding and never discussed the center's substantial or predominant use, our review of the record persuades us that the humanitarian nature of the vast majority of the center's services, *i.e.*, rehabilitation for Mercy outpatients, was undisputed.

The statute next required BOTA to determine whether the Fitness Zone and massage services were humanitarian or nonhumanitarian. If they were humanitarian, the statute authorized the ex-

emption without any further inquiry. If they were not humanitarian, the statute still authorized the exemption as long as the Fitness Zone and the massage services were "minimal in scope and insubstantial in nature" and "incidental" to the corporation's humanitarian purpose.

The statute provides that a service's responsiveness to a community need weighs in favor of its classification as humanitarian. This is where BOTA apparently lost its way, using this inquiry as a proxy for the overall question of whether Mercy had proved its case for the exemption. Because the competent evidence on community need was conflicting, BOTA mistakenly concluded that Mercy had failed to carry its entire burden and disallowed the exemption. See 9200 Santa Fe Corp., 19 Kan. App. 2d 91, 94, 864 P.2d 742 (1993) (applicant must prove community need exists "by a preponderance of competent evidence").

Giving BOTA the deference it is due, we have no quarrel with its factual finding that the Fitness Zone and massage services were not responsive to community need and therefore not humanitarian. We depart from BOTA on the legal effect of that finding. As stated above, the statute allows a tax exemption when the use to which property is put is primarily, though not solely, humanitarian. BOTA erred by failing to move to the next question: Do the Fitness Zone and the massage services provided at the center qualify as "minimal in scope and insubstantial in nature" and "incidental" to the center's primary humanitarian mission.

The revenue associated with the Fitness Zone memberships and massage services composed less than 4 percent of the center's total revenue. Future growth of the Fitness Zone component is severely limited by space and time, and 30 of the 82 memberships are held by hospital employees. Some of the remaining 52 memberships are held by former rehabilitation outpatients from the center who want to follow up on their therapy. They and their fellow members from the community and the hospital employees may make use of the center's equipment only when it is not in use by Mercy's current rehabilitation outpatients.

Under these facts, the Fitness Zone and massage services easily qualify as "minimal in scope and insubstantial in nature" under the

statute. "Incidental" is defined as "[s]ubordinate to something of greater importance; having a minor role." Black's Law Dictionary 765 (7th Ed. 1999). Under this definition, we hold that the Fitness Zone and massage services also qualify as "incidental" to the center's predominant outpatient rehabilitation services.

BOTA erred in finding that the property was not entitled to exemption under K.S.A. 2000 Supp. 79-201 *Ninth*.

### Cost Offset Finding

Mercy and *amicus curiae* Kansas Hospital Association (KHA) also argue that BOTA erroneously concluded applicant would be prohibited from using revenue from the Fitness Zone memberships and massage services to offset the costs of providing rehabilitation services, citing *Defenders of the Christian Faith, Inc. v. Horn*, 174 Kan. 40, 254 P.2d 830 (1953), and *Kansas State Teacher's Ass'n v. Cushman*, 186 Kan. 489, 351 P.2d 19 (1960). They assert no evidence was presented to support such a finding and say BOTA's reliance upon it to deny the exemption was unreasonable, arbitrary, and capricious.

Mercy and KHA are correct that no evidence was presented to indicate that the Fitness Zone and massage services were used to offset the costs of the rehabilitation services at the center. We note that BOTA seems to recognize the lack of evidence by stating its finding conditionally: "*If* the applicant provides these services to help offset the costs . . . ." (Emphasis added.) Given the lack of evidence, the finding was irrelevant and inappropriate excess verbiage that could have had no effect on BOTA's conclusion and that has no effect on our contrary decision.

Reversed.