(185 P.3d 295)
Nos. 97,728
97,886

In the Matter of the Appeal of INTER-FAITH VILLA, L.P., and INTER-FAITH DEVELOPMENT CORPORATION, From an Order Denying Exemption from Ad Valorem Taxation in Sedgwick County, Kansas.

Opinion filed June 6, 2008.

*Patricia M. Dengler*, of Brown, Dengler, Good & Rider, L.C., of Wichita, for appellants.

No appearance by appellee.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

GREEN, J.: Inter-Faith Villa, L.P. (Inter-Faith Villa), and Inter-Faith Development Corporation (IFDC) (collectively appellants) appeal from an order of the State Board of Tax Appeals (BOTA) denying their applications for exemption from ad valorem taxes on two parcels of real estate identified as Villa Central and Villa North in Sedgwick County. The appellants argue that BOTA erroneously interpreted and .applied the law pertaining to their applications when it determined that K.S.A. 79-201 *Ninth* and Article 11, § 1(b) of the Kansas Constitution did not apply to allow an exemption for the subject properties. Moreover, the appellants maintain that BOTA erroneously based its decision on determinations of fact that were unsupported by the evidence and that its order was otherwise unreasonable, arbitrary, or capricious.

We determine that because the subject properties in this case were primarily low income housing facilities, K.S.A. 79-201b *Fourth* is the applicable exemption statute here. Nevertheless, based on the plain meaning of K.S.A. 79-201b *Fourth* and the strict construction that must be given to exemption statutes, the appellants were not entitled to a statutory tax exemption due to their failure to meet the requirements of K.S.A. 79-201b *Fourth*. Moreover, the appellants do not fit within the charitable purposes exemption under Article 11, § 1(b)(2) of the Kansas Constitution because they have failed to show that the services they provided were "free of charge" or so "nearly free of charge as to make the charges nominal or negligible." See *Lutheran Home, Inc. v. Board*

*of County Commissioners*, 211 Kan. 270, 278, 505 P.2d 1118 (1973). Accordingly, we affirm BOTA's decision.

Inter-Faith Villa owns and operates Villa Central in Sedgwick County. Villa Central contains 37 housing units, two office areas, a community room, a kitchen, and a laundry room for the residents. Eight of Villa Central's housing units are for homeless people with chronic mental disabilities. The remaining 29 housing units are for people who need affordable housing. The rent is $400 for a one-bedroom apartment and $475 for a two-bedroom apartment, with utilities included. Community building activities at Villa Central take place in the on-site community room and include resident social events, life skills classes, community meals, and resident association meetings.

Inter-Faith Ministries Wichita, Inc. (IFM), a tax-exempt Kansas not-for-profit corporation, is the general partner of Inter-Faith Villa. IFM controls the operations of Villa Central. The limited partner is NDC Corporate Equity Fund IV, L.P., a Delaware limited partnership, that assisted in providing some of the financing for the acquisition and construction of Villa Central in exchange for low income housing tax credits. The units are rented at $370 for an efficiency apartment, $444 for a one-bedroom apartment, and $495 for a one-bedroom loft apartment, with all utilities included.

Other funding for Villa Central comes from the U.S. Department of Housing and Urban Development (HUD) Supportive Housing Program, 42 U.S.C. § 11381 (2000) *et seq.,* and the HOME Investment Partnership Program (HOME), 42 U.S.C. § 12721 (2000) *et seq.,* a construction loan from a commercial bank that holds a mortgage on the property, and rental income. All of Villa Central is actually and regularly used exclusively for cooperative housing for people with disabilities or people having a limited or low income, as provided under the HUD Supportive Housing Program.

IFDC owns and operates Villa North in Sedgwick County. Villa North contains 19 housing units for homeless people with chronic mental disabilities or alcohol or drug disabilities. An additional five housing units are for people who desire to live in the community,

such as property management staff, security officers, or full-time volunteers, but who do not require supportive services. Nevertheless, these five units have been used only for low income housing since Villa North opened. Villa North is funded by grants from the HUD Supportive Housing Program, by individual and corporate contributions, by HOME funds administered by the City of Wichita, and by rental payments. Housing assisted with HOME funding must meet the affordability requirements as set forth in federal regulations.

Most of the residents at both Villa Central and Villa North receive Section 8 low income vouchers, see 42 U.S.C. § 1404a (2000) *et seq.,* to assist in paying the rent. Residents pay rent for the apartments in accordance with low-income housing tax credits and HOME rent and income guidelines. When a resident is unable to pay the rent, a case manager will help the resident with financial planning and will also help the resident access community services that might assist in the payment of rent. If the resident is still unable to pay the rent, then the resident will be referred to an appropriate agency for help in housing or transferred to one of their temporary shelters. The record indicates that an individual was guaranteed only a 1-week stay at IFM's temporary shelter.

At both Villa Central and Villa North, supportive services are individually tailored to meet the needs of all residents. The supportive services are provided by a case manager who maintains a weekly service provider mainstream information listing to ensure that all residents receive the highest quality and most efficient services available. At a weekly meeting with each resident, the case manager reviews the services applied for and ensures that the services have or will be received. Some of the supportive services include referring residents to other social agencies, referring residents to mental health professionals, finding a trustee to help a resident with his or her finances, assisting residents in obtaining employment, helping a resident with financial planning, providing volunteers through IFM to visit residents and help them with activities of daily living, making residents aware of the eligibility requirements for various social services programs, and transporting residents to services through IFM's transportation program. Com-

munity building activities are planned for all residents at Villa Central and Villa North with the goal of creating an inclusive community that is respectful of all people. The office areas at both facilities are used for case management and community building activity planning.

In May 2004, Inter-Faith Villa filed its initial application for exemption from ad valorem tax on Villa Central. The exemption was requested under K.S.A. 79-201b *Fourth* from June 2001 forward. IFDC also filed an application for exemption from ad valorem tax on Villa North. The exemption was requested under K.S.A. 79-201b *Fourth* from July 2003 forward. The Sedgwick County Appraiser's office did not request a hearing on the applications and recommended that both exemptions be granted.

BOTA determined that Inter-Faith Villa did not satisfy the financing requirement of K.S.A. 79-201b *Fourth* and denied the application for exemption for Villa Central. Inter-Faith Villa filed a petition for reconsideration, which was granted by BOTA. In addition, both Inter-Faith Villa and IFDC amended their applications to add K.S.A. 79-201 *Ninth* as an alternative basis for exemption. The Sedgwick County Appraiser's office again recommended that the exemptions be granted.

In June 2006, BOTA held a hearing on both applications for tax exemption. At the hearing, BOTA's chairperson noted that the appellants had cited Article 11, §1(b) of the Kansas Constitution, the constitutional provision relating to exemption from ad valorem taxation, and asked if there was any authority for the requested exemption to be granted under that constitutional provision. The appellants' attorney requested time to brief that issue. The appellants filed a supplemental brief in which they argued that their applications for exemption fit within Article 11, §1(b) and that this constitutional provision provided an independent basis for an exemption for the subject properties.

In November 2006, BOTA issued its order on reconsideration denying Inter-Faith Villa's application for exemption of Villa Central. Finding that Villa Central was not "used exclusively" for an exempt purpose, BOTA denied the request for exemption under Article 11, §1(b) of the Kansas Constitution. Moreover, BOTA de-

termined that the applicable exemption statute was K.S.A. 79-201b *Fourth*, which specifically addressed low income housing, instead of K.S.A. 79-201 *Ninth*, which was the more general exemption statute dealing with property used for providing humanitarian services. Finally, the Board determined that because Inter-Faith Villa did not receive its financing from the federal programs identified in K.S.A. 79-201b *Fourth*, it was not entitled to an exemption under that statute.

On the same date, BOTA also issued its order denying IFDC's application for exemption for Villa North. BOTA based its decision on the same grounds as those it used to deny Inter-Faith Villa's application for exemption of Villa Central. IFDC filed a petition for reconsideration of BOTA's decision. In a written order, BOTA denied IFDC's petition for reconsideration.

*Standards of Review*

This court's standard of review of an order of BOTA is governed by K.S.A. 77-621, which states:

"(c)    The court shall grant relief only if it determines any one or more of the following:
(1)    The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied.
(2)    the agency has acted beyond the jurisdiction conferred by any provision of law;
(3)    the agency has not decided an issue requiring resolution;
(4)    the agency has erroneously interpreted or applied the law;
(5)    the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;
(6)    the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;
(7)    the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or
(8)    the agency action is otherwise unreasonable, arbitrary or capricious."

K.S.A. 77-621(c).

In an exemption case, we bear in mind that all real and personal property in Kansas shall be subject to taxation unless expressly exempted. See K.S.A. 79-101. Thus, taxation is the rule and ex-

emption from taxation is the exception under the Kansas Constitution and statutes. Any doubts are to be resolved against the exemption and in favor of taxation. The burden of establishing an exemption from taxation is on the party requesting it. *In re Tax Exemption Application of Johnson County Housing Coalition, Inc.*, 29 Kan. App. 2d 322, 325-26, 26 P.3d 1279, *rev. denied* 272 Kan. 1418 (2001). Constitutional and statutory provisions exempting property from taxation are strictly construed against the party claiming the exemption. Nevertheless, strict construction does not warrant unreasonable construction. *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 904-05, 47 P.3d 1275 (2002).

When reviewing BOTA's interpretation of a tax exemption statute, we apply the following standards:

" 'The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.]' " *Johnson County Housing Coalition*, 29 Kan. App. 2d at 324 (quoting *In re Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 [1999]).

Finally, the fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007).

*I. Did BOTA erroneously interpret and apply K.S.A. 79-201 Fourth as the only applicable exemption statute to the appellants?*

First, the appellants argue that BOTA erroneously interpreted

and applied the law concerning their applications for tax exemption by focusing on K.S.A. 79-201b *Fourth*, the housing exemption, as the only applicable exemption statute.

In reviewing BOTA's decision, we point out that BOTA is a specialized agency that exists to decide taxation issues and is considered to be the paramount taxing authority in Kansas. BOTA's decisions are given great weight and deference when it is acting in its area of expertise. The party challenging BOTA's decisions has the burden to prove that the action was erroneous. Nevertheless, if BOTA's interpretation of law is erroneous as a matter of law, an appellate court will take corrective steps. *In re Tax Appeal of Western Resources, Inc.*, 281 Kan. 572, 575, 132 P.3d 950 (2006).

### A. Statutory Tax Exemption for Low Income Housing

K.S.A. 79-201b *Fourth*, which specifically deals with tax exemptions of low income housing, states:

"All real property and tangible personal property, actually and regularly used exclusively for housing for elderly and handicapped persons having a limited or lower income, or used exclusively for cooperative housing for persons having a limited or low income, assistance for the financing of which was received under 12 U.S.C.A. 1701 *et seq.*, or under 42 U.S.C.A. 1437 *et seq.*, which is operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign, not-for-profit corporation; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such a corporation and used exclusively for the purposes of such housing. For the purposes of this subsection, cooperative housing shall mean those not-for-profit cooperative housing projects operating pursuant to sections 236 or 221(d)(3), or both, of the national housing act and which have been approved as a cooperative housing project pursuant to applicable federal housing administration and U.S. Department of Housing and Urban Development statutes, and rules and regulations, during such time as the use of such properties are restricted pursuant to such act, statutes or rules and regulations."

K.S.A. 79-201b *Fourth* was amended in 2004 to expand the definition of cooperative housing in the last part of the statute. L. 2004, ch. 173, sec. 6. This amendment did not change the financing requirement ("assistance for the financing of which was received under 12 U.S.C. 1701 *et seq.*, or under 42 U.S.C. 1437 *et seq.*") of

the statute.

Here, the subject properties were not used exclusively as housing for elderly and handicapped persons having a limited or lower income. Moreover, the properties were not used exclusively for cooperative housing as defined in K.S.A. 79-201b *Fourth*. The Board properly found that the appellants received financing assistance from two federal programs that were not codified in the particular sections cited by K.S.A. 79-201b *Fourth*. BOTA recognized that although the federal statutes had been amended to provide additional programs, the Kansas exemption statutes had not been amended to provide an exemption for organizations that receive financial assistance from the new federal programs. Accordingly, BOTA properly denied the appellants' requested exemptions under K.S.A. 79-201b *Fourth*.

In their appellate brief, the appellants fail to dispute BOTA's finding that they do not meet the requirements under the plain language of K.S.A. 79-201b *Fourth*. Instead, the appellants' arguments relate to BOTA's denial of exemptions under K.S.A. 79-201 *Ninth* and the Kansas Constitution. As a result, the appellants have abandoned any argument that they fit within the requirements of K.S.A. 79-201b *Fourth*. See *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 859, 137 P.3d 486 (2006) (An issue not briefed by an appellant is deemed waived or abandoned.).

## B. Statutory Tax Exemption for Humanitarian Services

The appellants first maintain that their subject properties fall within the humanitarian services exemption of K.S.A. 79-201 *Ninth*. K.S.A. 79-201 *Ninth* states:

"All real property and tangible personal property actually and regularly used by a community service organization for the predominant purpose of providing humanitarian services, which is owned and operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign not-for-profit corporation if: (a) The directors of such corporation serve without pay for such services; (b) the corporation is operated in a manner which does not result in the accrual of distributable profits, realization of private gain resulting from the payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered or the re-

alization of any other form of private gain; (c) no officer, director or member of such corporation has any pecuniary interest in the property for which exemption is claimed; (d) the corporation is organized for the purpose of providing humanitarian services; (e) the actual use of property for which an exemption is claimed must be substantially and predominantly related to the purpose of providing humanitarian services, except that, the use of such property for a nonexempt purpose which is minimal in scope and insubstantial in nature shall not result in the loss of exemption if such use is incidental to the purpose of providing humanitarian services by the corporation; (f) the corporation is exempt from federal income taxation pursuant to section 501(c)(3) of the internal revenue code of 1986 and; (g) contributions to the corporation are deductible under the Kansas income tax act. As used in this clause, 'humanitarian services' means the conduct of activities which substantially and predominantly meet a demonstrated community need and which improve the physical, mental, social, cultural or spiritual welfare of others or the relief, comfort or assistance of persons in distress or any combination thereof including but not limited to health and recreation services, child care, individual and family counseling, employment and training programs for handicapped persons and meals or feeding programs."

K.S.A. 79-201b *Fourth* is the more specific statute dealing with exemptions of low income housing while K.S.A. 79-201 *Ninth* is a more general statute that pertains to property used for the predominant purpose of providing humanitarian services. *Johnson County Housing Coalition*, 29 Kan. App. 2d at 326. "General and special statutes should be read together and harmonized whenever possible. To the extent a conflict exists, the special statute will prevail unless it appears that the legislature intended to make the general statute controlling." [Citation omitted.] *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1274, 136 P.3d 457 (2006).

Citing *Johnson County Housing Coalition, Inc.*, 29 Kan. App. 2d 322, BOTA found that K.S.A. 79-201 *Ninth* was inapplicable to this case. In *Johnson County Housing Coalition*, the appellant was a nonprofit community housing development organization that applied for a tax exemption on its 40-unit apartment complex used predominately as low income housing, housing for the disabled, and housing for handicapped persons. Thirty-five of the units were rented to low income households. BOTA determined that 79-201b *Fourth* controlled over 79-201 *Ninth* because 79-201b *Fourth* was the more specific statute addressing real property. BOTA further determined that because the appellant had not demonstrated that

it had met the requirements of 79-201b *Fourth,* it was not entitled to the exemption under that statute.

On appeal, the appellant in *Johnson County Housing Coalition* conceded that its property did not fall within the exemption under K.S.A. 2000 Supp. 79-201b *Fourth.* Nevertheless, the appellant argued that BOTA erred in determining that K.S.A. 2000 Supp. 79-201b *Fourth* applied and asserted that K.S.A. 2000 Supp. 79-201 *Ninth* was the applicable statute. This court disagreed with the appellant's argument and stated:

> "If K.S.A. 2000 Supp. 79-201 *Ninth* controlled, there would be virtually no purpose for any section of K.S.A. 2000 Supp. 79-201b. All exemptions listed in K.S.A. 2000 Supp. 79-201b can necessarily be classified as humanitarian activities. When a conflict exists between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless the legislature intended to make the general act controlling. *In re L.D.B.,* 22 Kan. App. 2d 821, 824-25, 924 P.2d 642 (1996). K.S.A. 2000 Supp. 79-201 *Ninth* deals generally with providing humanitarian services while K.S.A. 2000 Supp. 79-201b *Fourth* refers specifically to low income residential housing." 29 Kan. App. 2d at 326.

This court noted that legislative history made it clear that the legislature did not intend K.S.A. 2000 Supp. 79-201 *Ninth* to control over K.S.A. 2000 Supp. 79-201b *Fourth* in cases involving residential housing facilities. Instead, K.S.A. 2000 Supp. 79-201 *Ninth* had been adopted largely in response to a BOTA decision that required the subject property to be used "exclusively" for charitable, educational, scientific, or religious purposes. 36 Kan. App. 2d at 326.

Concluding that K.S.A. 2000 Supp. 79-201b *Fourth* was the more specific statute applicable to the facts of the case, this court in *Johnson County Housing Coalition* stated:

> "As evidenced by case law and the plain reading of the statute, K.S.A. 2000 Supp. 79-201 *Ninth* was not designed to govern residential housing facilities. The nonexclusive list of activities classified as 'humanitarian services' in the statute include health and recreation services, child care, counseling, employment and training programs for handicapped persons, and meals or feeding programs. Existing case law applying this subsection reinforces this position. [Citations omitted.]
>
> "K.S.A. 2000 Supp. 79-201 governs service-oriented facilities including religious, educational, literary, scientific, benevolent, charitable, or alumni associations or institutions; veterans' organizations; parsonages; and community service organ-

izations providing humanitarian services. Here, the subject property is a residential housing complex. K.S.A. 2000 Supp. 79-201b governs housing facilities. K.S.A. 2000 Supp. 79-201b *Fourth* is a more specific statute and is applicable to the facts of this case." 29 Kan. App. 2d at 327.

The appellants attempt to distinguish the instant case from *Johnson County Housing Coalition* by pointing out that the subject properties in this case are not just residential housing complexes. Instead, the appellants maintain that the residents in the subject properties are provided with supportive services to help solve the chronic homeless problem. The appellants contend that the predominant purpose of the subject properties is for humanitarian services that includes housing and, therefore, the properties fit within K.S.A. 79-201 *Ninth*.

Initially, in denying the appellants the exemptions under K.S.A. 79-201 *Ninth*, BOTA found that although the appellants provided services, such as a medical clinic and meals program, those services were not being conducted from the subject properties but from neighboring properties. In its later order denying IFDC's petition for reconsideration, BOTA recognized that support services and case management services were being provided at the subject properties. Nevertheless, BOTA found that the primary use of the subject properties was for residential services and not humanitarian services. As a result, K.S.A. 79-201b *Fourth* was the applicable exemption statute here.

The record establishes that both properties in this case were predominantly low income residential apartment complexes. Significantly, in both their initial and amended additions to their applications for exemption under K.S.A. 79-201b, Inter-Faith Villa acknowledged that the predominant use of their properties was for low income housing.

Although the appellants point out that they provided supportive services that included referring residents to appropriate medical providers for chronic diseases or drug and alcohol abuse, scheduling support groups, helping residents get job training, and helping residents find employment, these services were secondary to the appellants' main purpose in providing low income housing. This is highlighted by the fact that the appellants would transfer their

residents to a homeless shelter or refer them to another appropriate agency for help in housing when the residents were unable to pay their rent.

Moreover, the evidence in the record established that the funding for the subject properties was predominantly tied to providing low income housing. The funding under the HOME program required that the housing comply with the federal regulations for affordability requirements. The receipt of low-income tax credits required that all of the Villa Central units be leased to individuals or families whose income was 60% or less of the area median gross income and that a minimum of 20% of the apartments be leased to individuals whose income was 50% or less than the area median income. HUD provided grants that restricted their use to supportive housing. In addition, the amount of money received from the residents of the subject properties and the Section 8 reimbursement funds was based on the housing provided to the residents. Based on the record, the low income housing was the predominant service provided to the residents, with the other services being incidental to providing housing.

K.S.A. 79-201b *Fourth* is the statute specifically addressing tax exemptions for low income housing facilities. The subject properties in this case were primarily low income housing facilities, and K.S.A. 79-201b *Fourth* is the statute that is applicable here. Because the appellants have not met the requirements of K.S.A. 79-201b *Fourth*, their request for a tax exemption was properly denied.

## II. Does Article 11, §1(b)(2) of the Kansas Constitution provide an alternative basis for an exemption of the subject properties?

The appellants also contend that BOTA misinterpreted or misapplied the law when it determined that Article 11, §1(b) of the Kansas Constitution did not provide an alternative basis for an exemption for the subject properties. Article 11, §1(b)(2) exempts "[a]*ll property used exclusively for* state, county, municipal, literary, educational, scientific, religious, benevolent and *charitable purposes* . . . ." (Emphasis added.)

The appellants focus on the "charitable purposes" portion of

Article 11, §1(b)(2). The "charitable purposes" exemption under Article 11, §1(b)(2) is apparently self-executing because it is granted by the constitutional provision itself as opposed to empowering the legislature to enact legislation in the subject area. See *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, 659, 802 P.2d 584 (1990).

" 'The rule is that a self-executing provision of the constitution does not necessarily exhaust legislative power on the subject, but any legislation must be in harmony with the constitution and further the exercise of constitutional right to make it more available. Thus, even in the case of a constitutional provision which is self-executing, the legislature may enact legislation to facilitate the exercise of the powers directly granted by the constitution; legislation may be enacted to facilitate the operation of such a provision, prescribe a practice to be used for its enforcement, provide a convenient remedy for the protection of the rights secured or the determination thereof, or place reasonable safeguards around the exercise of the right. . . .'

" 'It is clear that legislation which would defeat or even restrict a self executing mandate of the constitution is beyond the power of the legislature.' " 247 Kan. at 659.

The appellants argue that because Article 11, §1(b) of the Kansas Constitution is self-executing, an exemption from ad valorem taxation can be granted within the provisions of the constitution without resorting to any statutory exemption. The appellants are correct. A property can be exempted from taxation if it comes within the self-executing exemption provision of Article 11, §1(b)(2) of the Kansas Constitution or within a statutory exemption. See Buchele, *Justifying Real Property Tax Exemptions in Kansas*, 27 Washburn L.J. 252, 255 (Winter 1988) ("[F]or any property to be exempt from taxation in Kansas, it must come within the provisions of the constitution or a property tax exemption statute.").

The appellants argue that their services of providing shelter and other services for the poor fit within the "used exclusively for . . . charitable purposes" portion of Article 11, §1(b)(2). In order to be entitled to an exemption under this constitutional provision, the appellants have the burden to prove that their properties are used exclusively for charitable purposes. See *Lutheran Home, Inc. v. Board of County Commissioners*, 211 Kan. 270, 275, 505 P.2d 1118 (1973).

The phrase "used exclusively" under Article 11, §1(b)(2) of the Kansas Constitution was intended by the framers to mean that "the use made of property sought to be exempt from taxation, must be only, solely, and purely for the purposes stated in the Constitution, and without admission to participation in any other use. [Citation omitted.]" *Lutheran Home*, 211 Kan. at 275-76. "The question is not whether the property is used partly or even largely for the purposes stated in the exemption provisions, but whether it is used exclusively for those purposes. [Citations omitted.]" 211 Kan. at 275.

Our Supreme Court in *Lutheran Home* adopted a strict two-element definition of "charity" or "charitable purposes," as required by Article 11, § 1(b)(2) and K.S.A. 79-201. 211 Kan. at 277-78. K.S.A. 2007 Supp. 79-201 *Second* follows the language of the constitutional charitable purposes exemption by exempting "[a]ll real property, and all tangible personal property, actually and regularly used exclusively for literary, educational, scientific, religious, benevolent or charitable purposes . . . ." Under the first part of the definition for "charity" adopted in *Lutheran Home*, the services must be provided "free of charge, or, at least, so nearly free of charge as to make the charges nominal or negligible." 211 Kan. at 278. Second, the services must be rendered to "those who are unable to provide themselves with what the institution provides for them, that is, they are legitimate subjects of charity." 211 Kan. at 278.

Here, in determining that the subject properties were not used exclusively for a charitable purpose, BOTA (as to IFDC) stated:

"The Board finds that the subject property is not used exclusively for an exempt purpose. The subject property is used for residential purposes, for which the applicant receives compensation, either from the tenants of the property and/or federal government in the manner of subsidized rents. For these reasons, the Board finds that the subject property is not 'used exclusively' and the request for exemption pursuant to Article 11, Section 1(b) of the Kansas Constitution is denied."

BOTA's decision is in accord with how our Supreme Court in *Lutheran Home* defined "charity" and "charitable" for purposes of the constitutional exemption. The evidence in the record estab-

lishes that the appellants were not making a free gift of housing to the tenants. Rather, the appellants required each resident in the subject properties to pay an established rent amount. The residents paid the rent amount either from personal funds or with Section 8 low income vouchers. The Section 8 vouchers entitled the appellants to receive federal funds as reimbursement for the residents' housing expenses. If the residents were unable to pay the required rent amount, they were not allowed to stay at the property. Instead, they were transferred to a homeless shelter or referred to an appropriate agency for help with housing. As a result, the appellants have failed to meet the requirement that the services provided were "free of charge" or so "nearly free of charge as to make the charges nominal or negligible." *Lutheran Home,* 211 Kan. at 278. Because the appellants do not fit within the definition of "charitable" as adopted in *Lutheran Home,* they have not met their burden to show they are entitled to a tax exemption under Article 11, §1(b)(2) of the Kansas Constitution.

Nevertheless, the appellants point out that K.S.A. 79-201 *Second,* the statutory charitable purposes exemption, allows reimbursement for services based on the actual expense of using the property for a charitable purpose. Specifically, under K.S.A. 79-201 *Second* (a) and (b), an agency or organization seeking an exemption for exclusive use for literary, educational, scientific, religious, benevolent or charitable purposes shall not be disqualified from the exemption because the agency or organization is reimbursed for such services based upon the recipient's ability to pay or is reimbursed for the actual cost of providing such services.

K.S.A. 79-201 *Second* (a) and (b), which were originally enacted by the legislature in 1986, broadened the scope of the statutory "charitable purposes" exemption. Nevertheless, the constitutional "charitable purposes" exemption has remained intact. Our Supreme Court has held that the legislature has the authority to enact legislation exempting property other than that named in the Kansas Constitution from taxation. The only requirement is that the statutory exemption must have a public purpose and be designed to promote the public welfare. *In re Tax Protest of Strayer,* 239 Kan. 136, 141, 716 P.2d 588 (1986); see also *In re Tax Application of*

*Lietz Constr. Co.*, 273 Kan. 890, 903, 47 P.3d 1275 (2002) ("[T]he legislature has the general power to confer additional tax exemptions, or exemptions broader in scope through the enactment of legislation, unless constitutionally prohibited from doing so."). The effect of K.S.A. 79-201 *Second* (a) and (b) was to confer additional tax exemptions on properties not covered by the constitutional exemption. These provisions, however, do not change the "charitable purposes" exemption under the Kansas Constitution and how this exemption has been construed by our Supreme Court.

Our Supreme Court in *Lutheran Home* clearly defined how an organization claiming a tax exemption would fit within the charitable purposes requirement of Article 11, §1(b)(2) of the Kansas Constitution. This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *Noone v. Chalet of Wichita*, 32 Kan. App. 2d 1230, 1236, 96 P.3d 674, *rev. denied* 278 Kan. 846 (2004). Because there appears to be no indication that our Supreme Court has backed away from its holding in *Lutheran Home*, we determine that the appellants do not fit within the charitable purposes exemption of the Kansas Constitution.

Importantly, the appellants did not request an exemption under K.S.A. 79-201 *Second* when they filed their applications for exemption or when they made their arguments to BOTA. As a result, BOTA was never given an opportunity to address the issue of whether an exemption should be granted under K.S.A. 79-201 *Second*. Moreover, the appellants do not argue on appeal that they are entitled to an exemption under K.S.A. 79-201 *Second*. As a result, any issue as to whether the appellants would qualify for a tax exemption under K.S.A. 79-201 *Second* is not properly before this court.

Further, even if the issue of whether the subject properties fit within K.S.A. 79-201 *Second* was properly before this court, the issue would fail. As discussed previously, K.S.A. 79-201b *Fourth* is the statute specifically pertaining to tax exemptions for low income housing complexes. K.S.A. 79-201 *Second* is a more general statute that deals with property used for literary, educational, scientific, religious, benevolent, or charitable purposes. The subject proper-

ties in this case are primarily low income housing complexes, and K.S.A. 79-201 *Fourth* would control here. Accordingly, any argument that an exemption should be granted under K.S.A. 79-201 *Second* lacks merit.

While the record indicates that the appellants have established an important service of providing residential low income housing and incidental services to those in need, the legislature has not yet enacted an exemption that would cover the appellants' property. The plain meaning of K.S.A. 79-201 *Fourth* requires that a taxpayer meet the requirements outlined in the statute in order to obtain a tax exemption for low income housing. When a statute is plain and unambiguous, we must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). Moreover, under our standard of review, tax exemptions must be interpreted strictly in favor of imposing the tax and against allowing the exemption for a party that does not clearly qualify. *In re Tax Appeal of Western Resources, Inc.*, 281 Kan. 572, 575, 132 P.3d 950 (2006). Because the appellants have not met the requirements under K.S.A. 79-201b *Fourth*, they are not entitled to a tax exemption for their low income housing properties. Until the legislature amends the statutes to include the new federal financing options for low income housing or otherwise expands the exemptions for low income housing, the tax exemptions requested by the appellants cannot be granted. Based on the plain language of K.S.A. 79-201 *Fourth* and the strict construction given to exemption statutes, BOTA was correct in denying the appellants an exemption on the subject properties.

### III. Did BOTA base its decision on determinations of fact not supported by the record?

Next, the appellants contend that BOTA's decision denying the requested exemptions should be reversed because BOTA's determinations of fact were not supported by the evidence. The appellants focus on the following finding in the Inter-Faith Villa case: "The Board finds that while the applicant provides services, such as a medical clinic and meals program, the services being provided

are not being conducted from the subject property, but are being provided from the neighboring properties owned by the applicant." The appellants maintain that Inter-Faith Villa provided substantial evidence that supportive services were provided at the subject properties.

Nevertheless, BOTA's finding was not in error. While there is evidence in the record that Inter-Faith Villa provided case management and other supportive services to its residents, the record shows that other services were offered off-site. For example, a case manager would help a resident obtain a job helping mow lawns or serving food at the Inter-Faith community center, which was across the street from Villa Central. Moreover, the residents had access to a health clinic that was located near the properties but was part of a separate federally funded program. In addition, Inter-Faith Ministries (IFM), which was located across the street from Villa Central, could provide after-school activities for children living in the subject properties. As a result, there is evidence in the record to support BOTA's finding that services were provided from neighboring properties.

In its order denying IFDC's petition for reconsideration, BOTA recognized that case management and supportive services were provided at the subject property. Nevertheless, as discussed previously, the record establishes that supportive services were collateral to the predominant use of the subject properties as low income housing. This was evidenced by the fact that the appellants would not allow the residents to remain at the properties when they were unable to pay rent. Instead, the residents would be transferred to a homeless shelter or referred to another agency for help with housing. Because the subject properties were predominantly low income housing complexes, K.S.A. 79-201b *Fourth* was the statute applicable to this case.

### IV.  *Was BOTA's decision unreasonable, arbitrary, or capricious?*

Finally, the appellants argue that BOTA's reliance on K.S.A. 79-201b *Fourth* as the only possible basis for exemptions for both properties is otherwise unreasonable, arbitrary, or capricious. The appellants contend that the decision was arbitrary because it earlier

granted an exemption for temporary housing under K.S.A. 79-201 *Ninth* but refused to grant the appellants an exemption for permanent housing under the same statute. In addition, the appellants argue that BOTA's focus on the financing requirement of K.S.A. 79-201b *Fourth* is difficult to reconcile with the decisions in *In re Tax Exemption Application of Mercy Health System of Kansas, Inc.*, 29 Kan. App. 2d 375, 26 P.3d 78 (2001), and *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 973 P.2d 176 (1999).

Nevertheless, it is unclear from the appellants' brief what was included in the temporary housing property for which BOTA previously granted an exemption under K.S.A. 79-201 *Ninth*. If this exemption was granted for IFM's homeless shelter, then that property is distinguishable from the low income housing complexes in this case. Generally, a homeless shelter provides shelter, food, and other necessary items of survival on a temporary basis free of charge. It is not low income housing. Residents are not required to pay a set amount of rent. On the other hand, the subject properties in this case were low income housing complexes for which residents were required to pay rent. If the residents were unable to pay rent, they were not allowed to stay at the properties. K.S.A. 79-201b *Fourth* is applicable to this case. Nevertheless, this statute might not be applicable to one of IFM's other properties.

Furthermore, the decisions in *Mercy Health System* and *University of Kansas School of Medicine* stand in stark contrast to the decision in this case because the properties in those cases were not low income housing complexes. In *Mercy Health System*, the subject property was a free-standing rehabilitation center where physical rehabilitation services were provided. In *University of Kansas School of Medicine*, the subject property was a primary care clinic that provided medical care to low income and medically underserved individuals. Because those cases did not involve low income housing complexes, K.S.A. 79-201b *Fourth* (and its requirements) would have been inapplicable.

The appellants in this case have not shown that BOTA's decision was otherwise unreasonable, arbitrary, or capricious. As discussed previously, BOTA's decision is supported by Supreme Court prec-

edent and this court's decision in *Johnson* as applied to the facts of this case. As a result, the appellants' argument on this issue fails.

Affirmed.