No. 56,668

IN RE: APPEAL OF THE BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, *Appellant*, v. EV. LUTHERAN GOOD SAMARITAN SOCIETY-GOOD SAMARITAN TOWERS, *Appellee*.

(694 P.2d 455)

Opinion filed January 26, 1985.

*Bruce F. Landeck,* assistant county counselor, argued the cause, and *Philip S. Harness,* assistant county counselor, was with him on the briefs for appellant.

*Eugene T. Hackler,* of Hackler, Londerholm, Corder, Martin & Hackler, Chartered, of Olathe, argued the cause, and *Robert C. Londerholm,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal by the Johnson County Board of County Commissioners from a decision of the Kansas State Board of Tax Appeals granting a South Dakota not-for-profit corporation, Ev. Lutheran Good Samaritan Society, exemption from ad valorem taxation on a nine-story building in Olathe, Kansas, known as Olathe Towers. The exemption was granted based upon K.S.A. 79-201b *Fourth and Fifth.* The Board of County Commissioners appealed the decision to the Shawnee County District Court which, subsequently, affirmed the BOTA decision. The matter is before us on the appeal therefrom by the Board of County Commissioners.

The following two issues are raised on appeal:

1. Did BOTA and the district court err in holding Ev. Lutheran

Good Samaritan Society was entitled to exemption from ad valorem taxation pursuant to K.S.A. 79-201b *Fourth and Fifth* on the property known as Olathe Towers?

2. Is the term "lowest feasible cost" utilized in K.S.A. 79-201b *Fifth* impermissibly vague?

Ordinarily, the proper procedure would be to determine the constitutional issue first. However, it is believed reversing the usual order is warranted by virtue of the issues raised.

The facts are essentially uncontroverted. The basic dispute raised in the first issue is whether, under the facts, applicant is entitled to exemption from ad valorem taxation.

Highly summarized, the facts of the use of the property are as follows. The improved real estate involved herein consists of 3.52 acres commonly described as 1425 East College Way, Olathe, Kansas. The property is owned by Good Samaritan Society, Inc., a South Dakota not-for-profit corporation. Ev. Lutheran Good Samaritan Society, Inc., is a North Dakota not-for-profit corporation founded in 1922 and is the parent corporation of the subsidiary, Good Samaritan Society, Inc. The boards of directors and operating policies of both corporations are identical. Both parent and subsidiary corporations have exemption letters from federal income taxation under § 501(c)(3) of the Internal Revenue Code, and both corporations are authorized to transact business in Kansas. The housing project on the subject property is operated by Ev. Lutheran Good Samaritan Society, Inc. (hereinafter referred to as "applicant"), and there is no challenge to said corporation being the proper entity to file the exemption application herein.

Situated on the subject real estate is a nine-story, 150-apartment building called "Olathe Towers." Direct loan financing of the construction was obtained by applicant from the Department of Housing and Urban Development (HUD) under § 202 of the National Housing Act in the amount of $5,426,700.00. The forty-year mortgage provides for monthly payments of $36,792.41. Sec. 202 of the National Housing Act provides in part that low income for the elderly projects are to operate in such a way that residents will not pay more than twenty-five per cent of their income for rent, based upon scheduled maximum annual income for various sized families. Olathe Towers contains 141 one-bedroom apartments and eight two-bedroom apartments plus the resident

manager's apartment. Neither meals nor medical services are included in the rentals charged. Occupancy began February 1, 1981. The exemption sought and granted is for 1981 and years subsequent thereto.

As of the date of the hearing before the BOTA (December 9, 1981) there was apparently one hundred per cent occupancy of the premises. The controversy herein rages over the occupancy of eight apartments. Four apartments are rented to elderly persons who do not qualify for federal rent subsidies—that is, their incomes are in excess of HUD guidelines for subsidization. Four other apartments are rented to handicapped individuals who are not elderly. The appellant Board of County Commissioners contends these eight rentals preclude the granting of exemption from ad valorem taxation.

Article 11, § 1, of the Kansas Constitution provides in pertinent part:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

K.S.A. 79-201b provides in pertinent part:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Fourth.* All real property and tangible personal property, actually and regularly used exclusively for housing for elderly persons having a limited or lower income, assistance for the financing of which was received under the national housing act and acts amendatory thereof and supplemental thereto, and which is operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign, not for profit corporation; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such a corporation and used exclusively for the purposes of such housing.

"*Fifth.* All real property and tangible personal property, actually and regularly used exclusively for housing for elderly persons, which is operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign, not for profit corporation, in which charges to residents produce an amount which in the aggregate is less than the actual cost of operation of the housing facility or the services of which are provided to residents at the lowest feasible cost, taking into consideration

such items as reasonable depreciation and interest on indebtedness and contributions to which are deductible under the Kansas income tax act; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such corporation and used exclusively for the purpose of such housing.

"The provisions of this section shall apply to all taxable years commencing after December 31, 1976."

Appellant calls our attention to our well-established case law which mandates that constitutional and statutory provisions exempting property from taxation are to be strictly construed. Illustrative of this principle is *National Collegiate Realty Corp. v. Board of Johnson County Comm'rs*, 236 Kan. 394, 690 P.2d 1366 (1984).

Essentially this issue breaks down into the following three areas of complaint:

1. Rental of four apartments to non-elderly handicapped persons precludes exemption under K.S.A. 79-201b *Fourth* or *Fifth* as the property is not exclusively used for the housing of elderly persons;

2. Rental of apartments to four persons not qualifying for federal rent subsidies precludes exemption under K.S.A. 79-201b *Fourth* or *Fifth;*

3. The "exclusive use" requirement contained in K.S.A. 79-201b *Fourth* and *Fifth* mandates that the property be exlusively used for purposes set forth in either *Fourth* or *Fifth* and a hybrid utilization destroys any exemption.

We shall first consider the argument relative to the legal effect of the presence of the physically handicapped non-elderly persons in the facility.

K.S.A. 79-201b grants exemption to property "used exclusively for housing for elderly persons having a limited or lower income, *assistance for the financing of which was received under the national housing act and acts amendatory thereof and supplemental thereto . . . ."* (Emphasis supplied.)

12 U.S.C. § 170lq (1982) provides in part:

"(a)(1) The purpose of this section is to assist private nonprofit corporations, limited profit sponsors, consumer cooperatives, or public bodies or agencies to provide housing and related facilities for elderly or *handicapped* families.

. . . .

"(6) In reviewing applications for loans under this section, the Secretary may consider the extent to which such loans—

(A) will assist in stabilizing, conserving, and revitalizing neighborhoods and communities;

(B) will assist in providing housing for elderly and handicapped families in neighborhoods and communities in which they are experiencing significant displacement due to public or private investment;

. . . .

"(d) **Definitions** as used in this section—

"(1) The term 'housing' means structures suitable for dwelling use by elderly or *handicapped* families which are (A) new structures, or (B) provided by rehabilitation, alteration, conversion, or improvement of existing structures which are otherwise inadequate for proposed dwelling use by such families.

. . . .

(4) The term 'elderly or *handicapped* families' means families which consist of two or more persons and the head of which (or his spouse) is sixty-two years of age or over or is *handicapped,* and such term also means a single person who is sixty-two years of age or over or is *handicapped.* A person shall be considered *handicapped* if such person is determined, pursuant to regulations issued by the Secretary, to have an impairment which (A) is expected to be of long-continued and indefinite duration, (B) substantially impedes his ability to live independently, and (C) is of such a nature that such ability could be improved by more suitable housing conditions. A person shall also be considered *handicapped* if such person is a developmentally disabled individual as defined in section 102(5) of the Developmental Disabilities Services and Facilities Construction Amendments of 1950. The Secretary shall prescribe such regulations as may be necessary to prevent abuses in determining, under the definitions contained in this paragraph, the eligibility of families and persons for admission to and occupancy of housing constructed with assistance under this section." (Emphasis supplied.)

It is uncontroverted that the handicapped tenants in Olathe Towers meet the definition of handicapped persons contained in 12 U.S.C. § 1701q(d) (1982).

Olathe Towers was planned so that certain apartments were specifically designed for use by physically handicapped persons. It is true that elderly persons may be physically handicapped and require usage of such specially designed facilities and inclusion thereof in the building design does not establish, by itself, that the building was designed to accommodate non-elderly handicapped persons. Applicant contends it is required by amendments to the National Housing Act to accept as tenants handicapped persons as defined by 12 U.S.C. § 1701q(a) (1982) and that the legal effect of this is to broaden the exemption granted in K.S.A. 79-201b *Fourth.* This point has merit.

Prior to 1964 the National Housing Act provided direct loan financing for construction of homes for low income elderly persons. Significant changes occurred in 1964 when the act was amended by striking out the term "elderly families and elderly persons" wherever it appeared and substituting therefore "elderly or handicapped families." Numerous amendments and supplements to the Act occurred in the same legislation to broaden eligibility for federally financed housing to include handicapped as well as elderly families. See National Housing Act, ch. 847, 48 Stat. 1246 (1934) (codified at 12 U.S.C. § 1701 *et seq.* [1982]) amended by the Housing Act of 1964, Pub. L. No. 88-560, Title II, § 201 *et seq.*, 78 Stat. 783 *et seq.* (1964). The previously cited 12 U.S.C. § 1701q (1982) was a part of the 1964 amendments to the Act.

Therefore, the handicapped residents of Olathe Towers are there by virtue of federal legislation authorizing their presence in such facilities constructed by direct loan from National Housing Act funds. Appellant does not challenge this fact. Rather, appellant argues that K.S.A. 79-201b *Fourth* states exemption from ad valorem taxation shall be granted for such federally financed facilities *used exclusively* for low income elderly and, hence, under strict construction, the presence of the handicapped persons therein establish applicant is not entitled to the exemption. We do not agree. Appellant's position ignores the provision of K.S.A. 79-201b *Fourth* which states:

"*Fourth.* All real property . . . actually and regularly used exclusively for housing for elderly persons having a limited or lower income, assistance for the financing of which was received under the *national housing act and acts amendatory thereof and supplemental thereto* . . . ." (Emphasis supplied.)

Appellant's rigid interpretation of K.S.A. 79-201b *Fourth* would effectively destroy the exemption. The National Housing Act, by acts amendatory and supplemental thereto, grants eligibility for residence in such facilities to handicapped persons. The clear intent of K.S.A. 79-201b *Fourth* was to exempt such public housing from ad valorem taxation. The "acts amendatory and supplemental thereto" language of K.S.A. 79-201b *Fourth* clearly shows that exemption is to be granted to facilities constructed under auspices of the National Housing Act as it originally existed and as it might be subsequently amended or supplemented.

Appellant additionally argues that the exemption is limited to facilities "used exclusively" for low income elderly on the basis that K.S.A. 79-201b *Fourth* was enacted in 1975—subsequent to the 1964 amendments to the National Housing Act previously discussed. Appellant reasons that inasmuch as handicapped persons had already been granted eligibility to live in such facilities by federal legislation, then, if the exemption was intended to include such persons, the legislature would have amended K.S.A. 79-201b *Fourth* to specifically include handicapped persons. We do not agree. The legislative history of K.S.A. 79-201b *Fourth* clearly shows it was a part of a general codification of ad valorem tax exemption laws. See 1975 Session Laws of Kansas, ch. 495 and Minutes of the House Committee on Assessment and Taxation, March 12, 1975.

The second aspect of this issue is whether the presence of four elderly tenants on the premises whose incomes are above federal guidelines for rent subsidies precludes exemption from ad valorem taxation. The battle on this question has been fought on rather curious terrain. The BOTA and the district court granted the applicant exemption on the basis of K.S.A. 79-201b *Fourth* and *Fifth*. Section *Fourth* grants the exemption to facilities for low income elderly (and handicapped, as previously determined) persons where the construction of the facility has been financed by the National Housing Act. Section *Fifth* grants exemption to housing facilities for low income elderly persons where:

"charges to residents produce an amount which in the aggregate is less than the actual cost of operation of the housing facility or the services of which are provided to residents at the lowest feasible cost."

Although not clearly spelled out in either the BOTA or district court opinions herein, the granting of the exemption in both K.S.A. 79-201b *Fourth* and *Fifth* apparently comes about from a conclusion that the handicapped residents qualify under *Fourth* and the non-rent subsidized elderly residents qualify under *Fifth*. This conclusion is consistent with the arguments of the parties herein. Bringing K.S.A. 79-201b *Fifth* into the fray spawns the previously referred to arguments relative to the constitutionality of *Fifth* and the propriety of hybridizing exemptions. We do not believe applicant's exemption requires consideration of K.S.A. 79-201b *Fifth*.

Let us look closely at K.S.A. 79-201b *Fourth*, repeated at this point for simplification:

"*Fourth.* All real property and tangible personal property, actually and regularly used exclusively for housing for elderly persons having a limited or lower income, *assistance for the financing of which was received under the national housing act* and acts amendatory thereof and supplemental thereto, and which is operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign, not for profit corporation; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such a corporation and used exclusively for the purposes of such housing." (Emphasis supplied.)

To what does the term "assistance for the financing of which was received under the national housing act" refer? Note use of "*was*" received. Clearly this can refer only to construction costs, as rent subsidies are ongoing items of expenditure. The use of the term "financing," again, indicates construction as opposed to rent subsidies of residents. Yet the case is argued along the lines that the presence of elderly residents whose rents are not federally subsidized and who personally pay the full rent somehow requires the applicant to seek exemption under K.S.A. 79-201b *Fifth.* We do not agree.

The exemption provided for in K.S.A. 79-201b *Fifth* requires the facility to be operated on a below cost or on a "lowest feasible cost" basis. Nothing comparable is found in *Fourth.* Why? The answer is simple. It is common knowledge that when construction of public housing for the elderly (and handicapped) is financed through the National Housing Act, the operation of the facility is subject to ongoing federal control. Resident eligibility, amount of rent to be charged, amount of rent subsidy, operational expenses, etc., are the subjects of a plethora of federal statutes and regulations. To gain the tax exemption set out in *Fourth,* an applicant does not need to show qualifying operating costs—only that it is a qualifying not-for-profit corporation operating a National Housing Act facility for the elderly (and qualified handicapped). Any such operation not in compliance with the mass of regulations is subject to penalties including the loss of federal rent subsidies. The federal government can effectively shut down the facility for noncompliance. The legislature in enacting K.S.A. 79-201b *Fourth* obviously relied

upon federal regulations to assure the goals and public purposes of the program designed to provide adequate housing for low income elderly and handicapped persons have been and continue to be met. The presence of the four elderly residents in Olathe Towers not receiving rent subsidies is a matter between applicant, as operator of the facility, and HUD. Burrowing through the financial statements of the elderly residents of Olathe Towers is neither required nor pertinent to a determination of applicant's eligibility for tax exemption under K.S.A. 79-201b *Fourth*.

We therefore conclude Olathe Towers is entitled to exemption from ad valorem taxation based upon K.S.A. 79-201b *Fourth*. By virtue of this determination, other issues raised need not be addressed.

The judgment is affirmed.