(194 P.3d 580)
No. 98,956

In the Matter of the Appeal of THE MENTAL HEALTH ASSOCIATION OF THE HEARTLAND FOR EXEMPTION FROM AD VALOREM TAXATION IN LEAVENWORTH COUNTY, KANSAS.

532

Opinion filed October 10, 2008.

*Matthew P. Clune,* of Spradley & Riesmeyer, a Professional Corporation, of Kansas City, Missouri, for appellant.

No appearance by appellee.

Before MALONE, P.J., ELLIOTT and GREEN, JJ.

GREEN, J.: Mental Health Association of the Heartland (MHAH) appeals from an order of the Board of Tax Appeals (BOTA) denying its application for exemption from ad valorem taxes on a parcel of real estate used to furnish low-income housing for the chronically homeless and severely mentally ill individuals. MHAH argues that BOTA erroneously interpreted and applied the law pertaining to its application when BOTA determined that K.S.A. 79-201 *Second* and K.S.A. 79-201 *Ninth* did not apply to allow an exemption for the property. Moreover, MHAH contends that K.S.A. 79-201b *Fourth* denies it due process and equal protection of the law. We disagree.

We determine that because the subject property in this case was primarily used as a low-income housing facility, K.S.A. 79-201b *Fourth* is the applicable exemption statute here. Moreover, based on the plain meaning of K.S.A. 79-201b *Fourth* and the strict construction that must be given to exemption statutes, we determine that MHAH is not entitled to a statutory tax exemption because of its failure to meet the requirements of K.S.A. 79-201b *Fourth.* Further, because K.S.A. 79-201b *Fourth* is the specific statute that controls low-income housing and because K.S.A. 79-201 *Second* is only a general statute, K.S.A. 79-201b *Fourth* is the applicable statute to determine whether MHAH is entitled to a statutory tax exemption. Because we have previously determined that MHAH was not entitled to a tax exemption under K.S.A. 79-201b *Fourth,* we affirm.

MHAH is a nonprofit corporation organized under the laws of Missouri and admitted to engage in business in Kansas as a foreign not-for-profit corporation. MHAH is exempt from federal income tax. Moreover, contributions to the corporation are tax deductible.

MHAH was formed in part "to advocate public and private sector policies, services, facilities, and financing which provide adequate and appropriate detection, treatment, rehabilitation and prevention programs" and "to promote and/or provide services and programs to meet the needs of individuals suffering from mental illnesses, to improve mental health, and to reduce conditions which impede the attainment of mental health."

The "Marion Home," the subject property, was built by MHAH to provide housing to low-income, chronically homeless, and mentally ill individuals. To live in the Marion Home, these individuals must provide information proving they are homeless and have a severe and persistent mental illness. All residents of the Marion Home receive for their mental illness one or more of the following: Social Security and Medicare disability payments.

To receive funding for the home, MHAH must comply with federal restrictions on use of the property. MHAH has a cap on the amount of rent it can charge residents. The rent cannot exceed 30% of the resident's adjusted gross income. The average rent MHAH currently charges residents is $234 per month—below the fair market value and below the expenses necessary to operate the home. MHAH also receives money through the McKinney-Vento Homeless Assistance Act. MHAH is required by U.S. Department of Housing and Urban Development (HUD) to raise funds for a matching donation of money. MHAH is dependent on grants from the federal government and tax-exempt donations from other charities and individuals.

In October 2006, MHAH applied for a tax exemption requesting that BOTA consider the Marion Home exempt from ad valorem taxation beginning in the year 2002. MHAH stated that the exclusive use of the property was an apartment building for chronically homeless, low-income individuals suffering from severe mental handicaps and other physical disabilities. MHAH stated that K.S.A. 79-201b *Fourth* authorized the exemption and the Marion Home met all the requirements set forth in that statute (*i.e.*, it was used exclusively for housing elderly and handicapped persons having a limited or low income, it was run by a nonprofit corporation, and it received federal funding under 12 U.S.C. § 1701 [2006] *et seq.*

or 42 U.S.C. § 1437 [2000] *et seq.*). In addition to its exemption application, MHAH listed all sources of funding for the Marion Home.

The Leavenworth County appraiser recommended that the property be granted exemption under K.S.A. 79-201b *Fourth*. In its trial brief to BOTA, MHAH maintained that the Marion Home was exempt from taxation under K.S.A. 79-201b *Fourth* and K.S.A. 79-201 *Ninth*. At a hearing on the matter, MHAH additionally requested exemption under K.S.A. 79-201 *Second* and the Kansas Constitution. See Kan. Const. art. 11, § 1(b) (2007 Supp.).

BOTA denied MHAH's request. BOTA first denied the request for exemption under the Kansas Constitution and K.S.A. 79-201 *Second*. BOTA held that these exemptions require that the property be used *"exclusively"* for charitable purposes. BOTA determined that the Marion Home was not used exclusively for a charitable exempt purpose because it was actually and regularly used for housing for which MHAH received compensation from the tenants or federal government in the form of subsidized rents or grants.

BOTA noted the provision within K.S.A. 79-201 *Second* that permits exemption although the applicant is reimbursed for services based on the recipient's ability to pay was inapplicable. BOTA determined the actual and regular use of the property was for residential purposes, which was not an exempt use under K.S.A. 79-201 *Second*. Furthermore, BOTA cited *In re Tax Exemption Application of Johnson County Housing Coalition, Inc.*, 29 Kan. App. 2d 322, 26 P.3d 1279, *rev. denied* 272 Kan. 1418 (2001), noting that K.S.A. 79-201b *Fourth* is the provision that specifically governs housing facilities.

BOTA next denied MHAH's request for exemption under K.S.A. 79-201 *Ninth*. BOTA reasoned that *Johnson County* held that the statute dealing with low-income housing, presumably referring to K.S.A. 79-201b *Fourth*, is the applicable exemption statute.

BOTA finally denied MHAH's request for exemption under K.S.A. 79-201b *Fourth*. BOTA determined that MHAH received funding under the McKinney-Vento Homeless Assistance Act, a

program not listed as an acceptable source of funding under the statute. BOTA rejected MHAH's argument that the McKinney-Vento Homeless Assistance Act should be considered part of the National Housing Act, reasoning that BOTA only had the authority given to it by the legislature. BOTA explained that the Kansas Legislature had not amended K.S.A. 79-201b *Fourth* to provide an exemption for new programs.

MHAH filed a petition for reconsideration of BOTA's decision, and that petition was denied.

## DID BOTA ERR IN DENYING MHAH'S REQUEST FOR EXEMPTION UNDER K.S.A. 79-201 *SECOND* AND K.S.A. 79-201 *NINTH*?

Standard of Review

MHAH appeals from the decision of BOTA denying its application for exemption from ad valorem taxation. The standard of review of an order of BOTA is governed by K.S.A. 77-621(c), which states that the court shall grant relief only if it determines:

" '(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious.' " *In re Tax Exemption Application of Inter-Faith Villa*, 39 Kan. App. 2d 810, 815, 185 P.3d 295 (2008).

Taxation is the rule and exemption is the exception under Kansas law. *Inter-Faith*, 39 Kan. App. 2d at 815-16. The burden of establishing an exemption is on the party requesting it, and all doubts are to be resolved against exemption. Constitutional and statutory

provisions exempting property from taxation are strictly construed against the party claiming the exemption. Strict construction, however, does not warrant unreasonable construction.

The interpretation of a statute by an administrative agency such as BOTA is entitled to judicial deference on review. *Johnson County*, 29 Kan. App. 2d at 324. Such deference is appropriate when the agency is one of special competence and experience. BOTA is a specialized agency that decides taxation issues and is considered to be the paramount taxing authority in Kansas. *Inter-Faith*, 39 Kan. App. 2d at 817. Thus, its decisions are given great weight and deference.

An agency's interpretation of a statute is not binding, and the final construction lies with the appellate court. *Johnson County*, 29 Kan. App. 2d at 324. Statutory interpretation is a question of law over which this court's review is unlimited.

"[T]he fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Inter-Faith*, 39 Kan. App. 2d at 816.

MHAH argues that the decision of BOTA is unconstitutional, unreasonable, arbitrary, and capricious and is an erroneous interpretation and application of the law. MHAH requests relief under K.S.A. 77-621(c)(1), (4), and (8).

## Applicable Exemptions

BOTA denied MHAH's request for exemption under the Kansas Constitution, K.S.A. 79-201 *Second*, K.S.A. 79-201 *Ninth*, and K.S.A. 79-201b *Fourth*.

Article 11, § 1(b)(2) of the Kansas Constitution states that all property used exclusively for benevolent and charitable purposes is exempt from taxation. Likewise, K.S.A. 79-201 *Second* provides that real property actually and regularly used exclusively for benevolent and charitable purposes is exempt from property or ad valorem taxes. The statute provides that an exemption applies to

property that is otherwise exempt even if the agency or organization is reimbursed for providing the services that accomplish its purpose based upon the recipient's ability to pay.

K.S.A. 79-201 *Ninth* states that all property actually and regularly used by a community service organization for the predominant purpose of providing humanitarian services is exempt from property or ad valorem taxes.

K.S.A. 79-201b *Fourth* exempts from property and ad valorem taxation all property actually and regularly used exclusively for housing elderly or handicapped persons having limited or lower income or used exclusively for cooperative housing for persons having a limited or low income, whose financing is received under 12 U.S.C. § 1701 *et seq.* or under 42 U.S.C. § 1437 *et seq.* and which is operated by a Kansas not-for-profit corporation or a not-for-profit corporation organized under the laws of another state that is duly admitted to engage in business in Kansas as a foreign corporation.

The key issue before this court is what provision applies in MHAH's case and whether MHAH is entitled to an exemption under that provision. MHAH argues on appeal that it is entitled to an exemption under K.S.A. 79-201 *Second* and K.S.A. 79-201 *Ninth*.

### K.S.A. 79-201 *Second*

BOTA first denied MHAH's request for exemption under the Kansas Constitution and K.S.A. 79-201 *Second*. BOTA held that the Marion Home was not used exclusively for charitable and benevolent purposes because the property was regularly used for housing for which MHAH received compensation. BOTA also relied on *Johnson County*, reasoning that K.S.A. 79-201b *Fourth* was the statute that specifically governed housing facilities. 29 Kan. App. 2d at 326-27. At a hearing on the matter, BOTA questioned the applicability of K.S.A. 79-201 *Second*, reasoning that K.S.A. 79-201b *Fourth* was the applicable statute based on the primary use of the property.

MHAH argues that the Marion Home is used exclusively for charitable purposes under K.S.A. 79-201 *Second*. Thus, MHAH

contends that BOTA erred in denying an exemption under that statute and erred in stating that it had to qualify under K.S.A. 79-201b *Fourth*. This same argument was recently rejected by a panel of this court in *Inter-Faith*. 39 Kan. App. 2d at 811. In *Inter-Faith*, two organizations had claimed an exemption for similarly owned housing facilities for homeless persons with chronic mental disabilities or alcohol/drug problems and for persons with limited or low income. Funding for those organizations came from various sources, including the HUD Supportive Housing Program, 42 U.S.C. § 11381 (2000) *et seq.*, the HOME Investment Partnership Program (HOME), 42 U.S.C. § 12721 (2000) *et seq.*, and rental income.

The organizations (Inter-Faith) filed for exemption from ad valorem taxation under K.S.A. 79-201b *Fourth*. BOTA determined that Inter-Faith did not satisfy the financing requirements of the statute and denied the application. Inter-Faith filed for reconsideration, adding K.S.A. 79-201 *Ninth* and Article 11, § 1(b)(2) of the Kansas Constitution as alternative bases for its argument. BOTA again denied the application, reasoning that the property was not used exclusively for an exempt purpose under the two statutes. Moreover, BOTA determined that the applicable statute was K.S.A. 79-201b *Fourth* and Inter-Faith did not receive funding from a program identified in K.S.A. 79-201b *Fourth*.

On appeal, this court upheld BOTA's decision. First, the court held that BOTA had properly denied the request for exemption under K.S.A. 79-201b *Fourth*. Interestingly, Inter-Faith failed to dispute BOTA's finding that it did not meet the requirements of K.S.A. 79-201b *Fourth*, thus abandoning that argument.

Second, the court rejected Inter-Faith's request for exemption under K.S.A. 79-201 *Ninth*. The court cited *Johnson County*, concluding that K.S.A. 79-201b *Fourth* was the specific statute that applied to exemptions for low-income housing. See *Johnson County*, 29 Kan. App. 2d at 326-27 (holding that K.S.A. 79-201b *Fourth* is the specific statute that governs low-income housing facilities). In *Johnson County*, this court reasoned that if K.S.A. 79-201 *Ninth* controlled, there would be no purpose for K.S.A. 79-201b *Fourth* because all the exemptions listed in the latter would

also classify as humanitarian activities under the former. The *Inter-Faith* court reasoned that legislative history clearly showed that the legislature did not intend K.S.A. 79-201 *Ninth* to control over K.S.A. 79-201b *Fourth* in cases involving housing facilities. Despite Inter-Faith's argument that the predominant purpose of the properties was a humanitarian service that *included* housing, Inter-Faith acknowledged in its application for exemption under K.S.A. 79-201b that the predominant use of the property was for low-income housing. Moreover, the *Inter-Faith* court noted that the humanitarian service was secondary to the main purpose of providing low-income housing, that the residents were transferred when they were unable to pay rent, and that the funding for the property was tied to low-income housing.

Third, the *Inter-Faith* court rejected Inter-Faith's request for exemption under Article 11, § 1(b)(2) of the Kansas Constitution. To qualify as charitable, the service must be (1) provided free of charge or so nearly free of charge that the charges are nominal or negligible, and (2) rendered to legitimate subjects of charity who are unable to provide for themselves what the institution provides. The court held BOTA correctly rejected Inter-Faith's request for exemption under the constitution because Inter-Faith was not making a free gift of housing to the tenants (that is, it collected rent and required that rent be paid). 39 Kan. App. 2d at 825.

Inter-Faith further argued that K.S.A. 79-201 *Second* contained a provision that permitted an exemption although the applicant may have been reimbursed for its services. The court held that this provision was enacted by the legislature to broaden the scope of the statutory charitable purposes exemption, but determined that it did not apply to the constitutional exemption. Although Inter-Faith did not request an exemption under K.S.A. 79-201 *Second* before BOTA or on appeal, this court further noted that the issue would have failed even if it were properly before the court. The *Inter-Faith* court pointed out that K.S.A. 79-201b *Fourth* was the specific statute that controlled low-income housing, while K.S.A. 79-201 *Second* was only a general statute. Although this statement is dicta, it does offer guidance.

Here, MHAH stated that the Marion Home was used exclusively for housing low income, chronically homeless individuals with mental or physical disabilities. K.S.A. 79-201b *Fourth* applies to property used exclusively for housing elderly or handicapped persons having limited or low income. General and specific statutes should be harmonized when possible, but when a conflict exists the special statute prevails unless it seems the legislature intended for the general statute to control. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1274, 136 P.3d 457 (2006). This court in *Inter-Faith* affirmed *Johnson County*'s holding that K.S.A. 79-201b *Fourth* was the specific statute that controlled exemptions for low-income housing. Thus, as the court stated in *Inter-Faith*, any argument that an exemption should be granted under K.S.A. 79-201 *Second* lacks merit.

Nevertheless, the present case is distinguishable from *Inter-Faith* because MHAH specifically requested an exemption under both K.S.A. 79-201 *Second* and the Kansas Constitution. The appellants in *Inter-Faith*, however, only requested an exemption under the constitutional provision. Because MHAH requested an exemption under K.S.A. 79-201 *Second*, we will consider its application to this case.

MHAH imposed a cap on the amount of rent it could charge residents. Moreover, the rent could not exceed 30% of the resident's adjusted gross income. The average rent MHAH charged residents was below the fair market value and below the expenses necessary to operate the home. Thus, it was reimbursed for the services it provided based on the recipient's ability to pay. For the sake of argument, we will assume that MHAH's act of providing housing was an exempt purpose under that part of K.S.A. 79-201 *Second* that allows an applicant to receive reimbursement for its services.

MHAH first argues that providing housing to the homeless or mentally ill was so obviously charitable that the Marion Home should be clearly covered under K.S.A. 79-201 *Second*. Nevertheless, when the applicant in *Inter-Faith* similarly argued that its purpose was a humanitarian service that merely involved housing, the court noted the following: Inter-Faith acknowledged that the predominant use of the property was for low-income housing.

Moreover, the court determined that the humanitarian service was secondary to the main purpose of providing low-income housing because the residents were transferred when they were unable to pay rent and because the funding for the property was tied to low-income housing. Similarly, MHAH admitted that the Marion Home was built to provide housing to low-income, chronically homeless, mentally or physically disabled individuals and that this was the exclusive use of the property. As in *Inter-Faith*, though its actions seem charitable in nature, the predominant purpose of the Marion Home is to provide low-income housing.

In summary, it can be said that the regularity of use of the property is the primary consideration in determining whether the property is exempt.

Second, MHAH notes that although other statutes provide exemptions for specialty housing there is no exemption for housing the homeless. Nevertheless, as explained earlier, the legislature specifically enacted K.S.A. 79-201b *Fourth* to cover low-income housing, which has been construed to include the homeless.

Third, MHAH argues that other Kansas cases have upheld an exemption for property used for residential purposes under K.S.A. 79-201 *Second*. Nevertheless, the cases cited by MHAH are distinguishable. In each case, this court found that larger organizations' use of a residence was exempt from taxation under K.S.A. 79-201 *Second*. See *In re Holy Spirit Association for the Unification of World Christianity*, Case No. 93,800, unpublished opinion filed January 13, 2006, slip op. at 2, 7 (where residence owned by church was used as residence for the pastor and her family, missionaries, and guests of the church, and for church office work, activities, meetings, and worship); *In re Tax Exemption Application of Fire Baptized Holiness Church v. Hendrix*, 28 Kan. App. 2d 598, 599, 602, 18 P.3d 308 (2001) (where dormitory owned by school housed high school students and dorm parents, and was used as a cafeteria, gymnasium, and auditorium).

Notably, in each case the primary purpose of the organization was religious or educational, an exempt purpose under K.S.A. 79-201 *Second*, and the residential use was only incidental to the primary purpose. *Holy Spirit*, slip op. at 7-9; *Application of Fire*, 28

Kan. App. 2d at 600-02. Here, although charity is likely a significant purpose of the Marion Home, the residential use is not incidental but is the predominant use of the property.

Fourth, MHAH argues that *In re Tax Exemption Application of Johnson County Housing Coalition, Inc.*, 29 Kan. App. 2d 322, 26 P.3d 1279, *rev. denied* 272 Kan. 1418 (2001), is inapplicable because the court did not rule upon K.S.A. 79-201 *Second* in that case. Indeed, in *Johnson County* the appellants argued that K.S.A. 79-201 *Ninth* permitted the exemption. The court held that K.S.A. 79-201b *Fourth* was the specific statute that controlled over K.S.A. 79-201 *Ninth*. Nevertheless, in the absence of direct authority, we can draw some guidance from *Johnson County* in its interpretation of K.S.A. 79-201 *Ninth* and K.S.A. 79-201b *Fourth*.

Fifth, MHAH argues that BOTA may have denied the exemption because it believed that the Marion Home was not a "service-oriented" facility. MHAH notes that the court in *Johnson County* stated that K.S.A. 79-201 governs service-oriented facilities including benevolent or charitable organizations, but K.S.A. 79-201b governs housing facilities. MHAH argues that there is no indication that K.S.A. 79-201 *Second* is limited to service-oriented facilities, and even if this were a requirement, MHAH would meet that requirement. First, this court's reference in *Johnson County* to "service-oriented facilities" may have been mere dicta within the opinion. 29 Kan. App. 2d at 327. No case since *Johnson County* has suggested that a property must be service-oriented to qualify for an exemption under K.S.A. 79-201 *Second*. Second, there is no indication that BOTA denied MHAH's application on that basis. Rather, BOTA determined that the actual and regular use of the property was for low-income housing, which is specifically governed by K.S.A. 79-201b *Fourth*. Consequently, we determine that this argument lacks merit.

Sixth, MHAH argues that the "specific trumps general rule" was improperly applied by BOTA. MHAH argues that the court can apply this rule only if both the general and specific statutes apply to a factual situation. MHAH argues that because BOTA determined that it did not qualify under K.S.A. 79-201b *Fourth*, it was

illogical to apply the rule and hold that it cannot apply under the general statute.

MHAH notes that BOTA found K.S.A. 79-201b *Fourth* "cannot apply to the facts of our case." Nevertheless, what BOTA essentially determined was that K.S.A. 79-201b *Fourth did* apply to the facts of MHAH's case but that MHAH had failed to meet the requirements of the statute. In *Inter-Faith,* the court likewise upheld BOTA's finding that the applicant did not meet the requirements of K.S.A. 79-201b *Fourth.* Similarly, the court held that Inter-Faith could not receive an exemption under the general statute, K.S.A. 79-201 *Ninth.* 39 Kan. App. 2d at 821.

Although the desire to give a tax exemption to organizations which furnish low-income housing under K.S.A. 79-201b *Fourth* is clear on the face of the statute, thus removing the need to consider legislative intent, still the legislative history provides explicit confirmation on this point beginning in 1985. In 1985, a special committee was asked to review state policy on property tax exemptions for special care housing as to uniformity and consistency. *In re Tax Exemption Application of Presbyterian Manor, Inc.,* 16 Kan. App. 2d 710, 712-13, 830 P.2d 60 (1992). The committee recommended the legislature exempt housing provided by state-licensed, nonprofit corporations whose contributions are deductible in Kansas and whose rent payments provide less than the total operating costs of the facility. In enacting K.S.A. 79-201b *Fourth,* the legislature relied upon the strict requirements of federal regulations to assure the goals and public purposes of the program would continue to be met. *Board of Johnson County Comm'rs v. Ev. Luth. Good Samaritan Soc.,* 236 Kan. 617, 624-25, 694 P.2d 455 (1985).

Our legislature intended that corporations which provided low-income housing and hoped to receive a tax exemption would obtain funding from certain federal programs, thus remaining subject to certain standards. If such corporations were allowed to bypass K.S.A. 79-201b *Fourth* and receive an exemption under the general K.S.A. 79-201 *Second,* K.S.A. 79-201b *Fourth* would become meaningless. The record lacks any evidence that BOTA is using K.S.A. 79-201b *Fourth* as a means to unfairly exclude charitable

corporations from receiving exemptions. To the contrary, BOTA is merely complying with legislative intent by ensuring that corporations that provide low-income housing meet the special requirements set forth by the legislature under K.S.A. 79-201b *Fourth* to receive that exemption.

Seventh, MHAH asserts that because the legislature intended to expand tax exemptions by creating K.S.A. 79-201b, charitable organizations should not be excluded from receiving tax exemptions under that section. This argument is fallacious because any charitable organization providing low-income housing that failed to meet the specific requirements of K.S.A. 79-201b *Fourth* could receive an exemption under K.S.A. 79-201 *Second*. As previously stated, this would cause the former statute to become meaningless.

Eighth, MHAH argues that the Marion Home need not be "used exclusively" for charitable purposes to qualify under K.S.A. 79-201 *Second* because the legislature has moved away from this strict requirement. BOTA held that K.S.A. 79-201 *Second* required that the property be used *"exclusively"* for charitable purposes and that the Marion Home did not meet this requirement because it was used for residential purposes for which MHAH received compensation. Indeed, in *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 754-57, 973 P.2d 176 (1999), our Supreme Court recognized that the legislature departed from the strict definition of "charitable and benevolent" and the "exclusive use" requirement by (1) amending K.S.A. 79-201 to add exemptions for real property, such as property used exclusively by not-for-profit corporations for housing low-income persons, (2) amending K.S.A. 79-201 to provide, among other things, that an exemption is not inapplicable to otherwise exempt property if the organization is reimbursed for services based on ability to pay by the recipient, and (3) creating K.S.A. 79-201 *Ninth*, which omitted the "exclusive use" requirement in favor of a "predominant purpose" requirement.

BOTA considered the exemption in K.S.A. 79-201b *Fourth* but found MHAH did not meet the financing requirement. BOTA did not ignore the provision in K.S.A. 79-201 *Second* that allows exempt property to receive the exemption although the organization

receives reimbursement for its services, but found that this provision was inapplicable because the regular use of the Marion Home was for residential purposes, not for charitable and benevolent purposes as contemplated by K.S.A. 79-201 *Second*. BOTA considered the exemption in K.S.A. 79-201 *Ninth*, but found it inapplicable in light of *Johnson County*. Thus, BOTA exhausted the avenues the legislature had created when departing from the "exclusive use" requirement. More important, in light of the inapplicability of K.S.A. 79-201 *Second*, it is irrelevant whether "exclusive use" is a requirement or whether MHAH meets that requirement.

Ninth, MHAH argues that BOTA's ruling improperly injects a "non-residential requirement" into K.S.A. 79-201 *Second* (that is, K.S.A. 79-201b *Fourth* excludes housing from K.S.A. 79-201 *Second* when the latter statute does not specifically require that it be excluded). This is clearly not the case. First, in *Holy Spirit* and *Application of Fire*, our court held that residences *were* entitled to exemption under K.S.A. 79-201 *Second* when (1) the applicant fell under K.S.A. 79-201 *Second* due to its primarily religious or educational nature, (2) it was not subject to K.S.A. 79-201b *Fourth* because the property was not low-income housing, and (3) the residence was only incidental to the religious or educational aspect. *Holy Spirit*, slip op. at 1-9; *Application of Fire*, 28 Kan. App. 2d at 600-02. Thus, it is possible for residences to obtain exemption under K.S.A. 79-201 *Second* under appropriate circumstances. Second, K.S.A. 79-201b *Fourth* does not exclude all residences from K.S.A. 79-201 *Second* but only excludes the specific type of housing listed in the statute: low-income housing. BOTA is observing the plain language of the statute by only permitting an exemption under K.S.A. 79-201b *Fourth* when the property is low-income housing.

## Article 11, § 1(b) of the Kansas Constitution

MHAH fails to brief the application of Article 11, § 1(b) to its case. Furthermore, MHAH admits it does not specifically appeal this issue because the article has been codified by K.S.A. 79-201 *Second*. Thus, we determine that MHAH has abandoned this issue. See *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999).

K.S.A. 79-201 *Ninth*

BOTA next denied MHAH's request for exemption under K.S.A. 79-201 *Ninth*, citing *Johnson County*. As discussed earlier, this court in *Inter-Faith* rejected an exemption under K.S.A. 79-201 *Ninth*, affirming *Johnson County*'s holding that K.S.A. 79-201b *Fourth* is the controlling statute that applies to low-income housing. 39 Kan. App. 2d at 818-22. Thus, BOTA correctly determined that MHAH was not entitled to an exemption under K.S.A. 79-201 *Ninth*.

K.S.A. 79-201b *Fourth*

MHAH fails to brief the application of K.S.A. 79-201b *Fourth* to its case, thus abandoning any argument in this regard. See *Valdez*, 266 Kan. at 784.

In any event, K.S.A. 79-201b *Fourth* permits an exemption when assistance for the financing of the subject property is received under 12 U.S.C. § 1701 *et seq.* or 42 U.S.C. § 1437 *et seq.* BOTA denied MHAH's request for exemption because MHAH receives funding under the McKinney-Vento Homeless Assistance Act, which is not an acceptable source of funding listed in K.S.A. 79-201b *Fourth*. BOTA rejected MHAH's argument that the Act should be considered part of the National Housing Act, noting that the Kansas Legislature had not amended K.S.A. 79-201b *Fourth* to provide an exemption for new programs.

Similarly, in *Inter-Faith*, BOTA denied the exemption in part because Inter-Faith did not receive its funding from a program identified in K.S.A. 79-201b *Fourth*. This court stated:

"While the record indicates that the appellants have established an important service of providing residential low income housing and incidental services to those in need, the legislature has not yet enacted an exemption that would cover the appellants' property. . . . Until the legislature amends the statutes to include the new federal financing options for low income housing or otherwise expands the exemptions for low income housing, the tax exemptions requested by the appellants cannot be granted." 39 Kan. App. 2d at 827.

Furthermore, this court held that Inter-Faith abandoned a challenge to BOTA's finding that it did not meet the requirements of K.S.A. 79-201b *Fourth* by failing to dispute the issue on appeal.

Because MHAH similarly fails to dispute or provide any argument contrary to the position taken by BOTA in this regard, this court need not further address this issue.

Does K.S.A. 79-201b *Fourth* deny MHAH due process and equal protection of the law?

MHAH finally argues that BOTA's ruling is unconstitutional because it denies MHAH equal treatment and due process of law.

MHAH raised this constitutional argument in its motion for reconsideration, but BOTA did not rule on the issue. Nevertheless, BOTA is not vested with authority to determine the constitutionality of a statute. *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 906, 47 P.3d 1275 (2002). Determining whether a statute is unconstitutional is a question of law over which this court exercises a de novo standard of review. *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 250, 930 P.2d 1 (1996). The constitutionality of a statute is presumed, and all doubts must be resolved in favor of its validity. *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998). A statute must clearly violate the constitution before it may be struck down, and the court must construe it as constitutionally valid if there is any reasonable way to do so. The burden is on the party challenging constitutionality. *In re Tax Appeal of Weisgerber*, 285 Kan. 98, 102, 169 P.3d 321 (2007).

Although a legislative act may not always be viewed as fair or what a court thinks should be done, that does not make the act unconstitutional. *Peden*, 261 Kan. at 251. It is not the judicial province to correct every abuse of legislative taxing power. 261 Kan. at 251 (citing *Morton Salt Co. v. City of South Hutchinson*, 159 F.2d 897, 900 [10th Cir. 1947]). Legislatures possess the greatest freedom in classification in the area of taxation. *Madden v. Kentucky*, 309 U.S. 83, 88, 84 L. Ed. 590, 60 S. Ct. 406 (1940).

Section 1 of the Fourteenth Amendment to the United States Constitution states that no State shall deprive any person of life, liberty, or property without due process of law. See Kan. Const. Bill of Rights, § 18. Due process ensures the fair and orderly administration of the law and emphasizes fairness between the State

and the individual. *Wesley Medical Center v. McCain*, 226 Kan. 263, 265, 597 P.2d 1088 (1979). Our Supreme Court has declined to disturb tax assessments unless they clearly transgress reasonable limits, stating there must be some legal effect that is the equivalent of an intentional or fraudulent purpose nullifying the principles safeguarding a citizen's rights and property to violate due process. 226 Kan. at 265 (citing *Great Northern Ry. v. Weeks*, 297 U.S. 135, 80 L. Ed. 532, 56 S. Ct. 426 [1936]). A statute does not violate due process if it is necessary to effectuate a legitimate and substantial state interest and is not applied in an arbitrary or capricious manner. 226 Kan. at 266 (citing *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.*, 216 Kan. 306, 532 P.2d 1263 [1975]).

Equal protection is implicated when a statute treats "arguably indistinguishable" classes of people differently. *Smith v. Printup*, 254 Kan. 315, 321, 866 P.2d 985 (1993). When a taxpayer asserts that tax rates implicate equal protection (that is, the law results in economic inequality), the court evaluates the statute under a rational basis standard. Under this standard, a law is constitutional despite unequal classification if the classification bears some reasonable relationship to a valid legislative objective. *Peden*, 261 Kan. at 252. Any state of facts that rationally justify the classification will uphold the statute. 261 Kan. at 258. There must be relevance between the classification and the objective. Relevance is accomplished if the classification is rationally related to the legitimate legislative purpose of the statute. A statute cannot classify persons into groups based on criteria that is unrelated to the goal of the statute and may not be arbitrary.

As noted earlier, it would seem that the legislature enacted K.S.A. 79-201b *Fourth* in an effort to ensure that recipients of low-income housing tax exemptions meet certain requirements to maintain consistency and uniformity. Because K.S.A. 79-201b *Fourth* is reasonable to effectuate a legitimate and substantial state objective, the statute satisfies due process.

Moreover, the statute applies to all nonprofit organizations which use property exclusively for housing low-income, elderly, or handicapped persons. Although the statute appears to treat classes of people differently by specifying a particular group of persons to

which the statute applies, thus implicating the Equal Protection Clause, the statute nevertheless serves a legitimate state purpose. The classification (not-for-profit organizations that provide low-income housing) is directly related to the purpose of ensuring uniformity when offering tax exemptions. Thus, the statute survives the rational basis test and does not violate equal protection.

For the reasons explained earlier, there is no evidence that BOTA incorrectly or erroneously interpreted or applied the law, that its actions were unreasonable or arbitrary, or that the statutes discussed above are unconstitutional. The burden of establishing an exemption is on the party requesting it, and MHAH has failed to meet this burden. Consequently, BOTA appropriately denied MHAH's request for exemption.

Affirmed.